No. 14545

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

WALTER HUME,

Claimant and Appellant,

vs.

ST. REGIS PAPER COMPANY, Employer,

Defendant and Respondent.

_____

Appeal from:  Workers' Compensation Court
              Honorable William E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Moore, Lympus & Doran, Kalispell, Montana
        James D. Moore argued, Kalispell, Montana

    For Respondent:

        Warden, Walterskirchen & Christiansen, Kalispell, Montana
        Merritt Warden argued, Kalispell, Montana

_____

                    Submitted:  December 11, 1979

                    Decided:  MAR - 7 1980

Filed:  MAR - 7 1980

_____Thomas J. Kearney_____
                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Claimant, Walter Hume, filed a petition with the Workers' Compensation Court, Flathead County, seeking compensation for injuries suffered during his employment with defendant, St. Regis Paper Co. Claimant appeals the denial of his petition.

On October 7, 1975, appellant was pulling and stacking timber for his employer, St. Regis Paper Company, when he stretched muscles in his shoulder and lower neck. Appellant continued to work for ten months following this injury, during which time he received a second injury. He stopped working on August 6, 1976, after seeing two chiropractors and a Kalispell neurologist, Dr. Nelson. Respondent, St. Regis, paid total disability benefits to appellant for this injury until May 25, 1977. Upon receiving the report from a Spokane neurologist, Dr. Lynch, that appellant's "chronic pain probably is more psychogenic in origin, than due to tissue injury," respondent terminated benefits to claimant.

Claimant filed a petition with the Workers' Compensation Court seeking temporary total disability or, in the alternative, a determination of the degree of his disability with an award of permanent partial disability and payment for benefits unreasonably terminated by respondent.

A hearing on claimant's petition took place on October 4, 1977. Three witnesses testified at the hearing: the claimant, his treating physician, Dr. Nelson, M.D., and defendant's only witness, Sidney M. Brown, who was the insurance director for defendant.

The Workers' Compensation Court took judicial notice of the contents of the file from the Division of Workers' Com-

-2-

pensation and advised counsel that it would grant leave to take the deposition of the author of any record or document in the file if counsel found the procedure objectionable. No objections were made. The file included the reports of four medical doctors and two chiropractors.

After the hearing had concluded and upon the respondent's request, the court ordered the appellant to submit to a medical examination by Dr. Richard C. Dewey, M.D. The Workers' Compensation Court entered findings of fact and conclusions of law and judgment on June 8, 1978. Its findings of fact stated the results of Dr. Dewey's examination and the report of a Spokane V.A. Hospital, which respondent furnished to the court several months after the hearing concluded.

The court's conclusions of law stated that the claimant failed to prove by a preponderance of the credible evidence that his present symptoms and complaints were related to the accident of October 7, 1975. The court's judgment denied all of appellant's requests for relief. Claimant has appealed this judgment.

Appellant presents four issues to this Court for review:

1. Was the judgment of the Workers' Compensation Court supported by substantial evidence, or did the court err in disregarding medical evidence establishing that appellant's work-related injury caused appellant's disability existing at the time of the hearing?

2. Did the court err in ordering appellant to submit to a physical examination after the hearing when no new relevant medical allegations were raised during the hearing itself?

3. Did the court err in considering a medical report

from the V.A. Hospital which was submitted to the court four months after the record had been closed?

4. Did the court err in taking judicial notice of the medical reports contained in the file from the Workers' Compensation Division?

Walter Hume contends that the judgment of the Workers' Compensation Court is not supported by substantial evidence and should be reversed. He argues that he presented a prima facie case through uncontroverted evidence that he was entitled to compensation benefits. He further argues that he proved by substantial evidence that he was injured as a result of his industrial accident, that his present condition is painful and disabling, and that said condition is a result of the accident. The defendant and the Workers' Compensation Court recognized that claimant was entitled to compensation and medical benefits until May 25, 1977, when benefits were terminated despite the absence of evidence of any intervening cause or any alternative explanation for claimant's present, undisputedly painful and disabling condition.

Claimant-appellant argues further that the Workers' Compensation Judge abused his discretion by opening the record after the hearing on the merits, without requiring the defendant to show excuse or good cause. This removed any incentive for the company or carrier to prepare for trial and placed an additional burden on the claimant. Claimant alleges that he made a proper objection to any consideration of the additional post-hearing evidence.

Finally, appellant urges that the Workers' Compensation Judge improperly took judicial notice of the entire Workers' Compensation Division file. Even though the court advised

counsel that it would grant leave to take the deposition of the author of any medical report or other document in the file if counsel found the procedure objectionable, this allegedly violated the rule in Hert v. J. J. Newberry Co. (1978), ___ Mont. ___, 584 P.2d 656, 35 St.Rep. 1345, rehearing denied ___ Mont. ___, 587 P.2d 11, 35 St.Rep. 1353A, and thus deprived claimant of his right to cross-examine and interpose objections.

Respondent argues that the lower court did not commit error in taking judicial notice of the medical reports contained in the Workers' Compensation Division file since Hert was decided one year after the hearing in this case. Respondent argues further that Hert held that the right to cross-examine could be waived by any party, and appellant waived his right by failing to object.

The first matter which must be addressed is whether or not the lower court erred in ordering appellant to submit to another physical examination after the October 4, 1977 hearing, and in considering the results of that examination when no new relevant medical allegations were raised during the hearing itself. Respondent contends that his request for another physical examination of the claimant was made in open court and that no objection to this procedure was raised by claimant's attorney at that time, although he objected when an appointment was made for Dr. Dewey to examine the claimant. Therefore, respondent seeks to take advantage of the established rule that evidentiary matters must be objected to at the time of trial or they will not be considered on appeal. Hayes v. J.M.S. Construction (1978), ___ Mont. ___, 579 P.2d 1225, 1227, 35 St.Rep. 722; Sikorski v. Olin (1977), ___ Mont. ___, 568 P.2d 571, 574, 34 St.Rep.

1042.

At the close of the October 4, 1977 hearing the following discussion took place:

> "MR. WARDEN: Well, we may want to have this man seen by some other practitioner, Your Honor. I think I'm a little bit alarmed at Dr. Nelson's diagnosis here, and for the man's own welfare it might be advisable to have it doubly checked, although we attempted to do that up to this point as you can tell from the file, but we didn't have the benefit of today's testimony until this time.

> "THE COURT: Very well, well, if that is determined necessary, if you and Mr. Moore cannot agree upon it, let me know and I'll make the necessary order and then we'll post it on our schedule as December the 9th as the time for Findings of Fact and Conclusions of Law.

> "And if there's nothing further, the Court is adjourned."

Although claimant's counsel made no objection to the additional examination at this time, he did file a formal objection and a letter memorandum in support thereof a month later on November 4, 1977. Nevertheless, the December 20, 1977 examination and report of Dr. Dewey were considered by the Workers' Compensation Judge in his findings of fact nos. 21 and 22. To do so was not error, since claimant's attorney, being fully apprised that the lower court intended to allow an additional examination, failed to make a timely objection. Hayes, supra.

Walter Hume was examined at the Spokane Veterans Administration Hospital during July of 1977. Some months subsequent to the October 4, 1977 hearing, copies of claimant's Veterans Administration medical records were obtained by the defendant and forwarded to Judge Hunt, who made reference to them in his finding of fact no. 23.

Claimant had no opportunity to object to the Workers'

-6-

Compensation Court's consideration of these medical records. This Court need not consider whether or not that procedure constituted error, however, because in his brief "[c]laimant would concede that the V.A. reports simply corroborated claimant's testimony, that the shrapnel injury was unrelated to the condition suffered by claimant from and after the October 1975 accident." If there was error in considering these reports, a question this Court need not decide, that error would admittedly be harmless error not affecting the substantial rights of the claimant. Rule 61, M.R.Civ.P.

The next issue is whether or not the Workers' Compensation Judge improperly took judicial notice of the entire Workers' Compensation Division file, including the medical reports contained therein, at the outset of the hearing. Appellant contends that contrary to the rule set forth by this Court in Hert, this procedure deprived him of his rights to cross-examine the authors of those reports and to interpose objections. We find it unnecessary to decide this question because even if we assume, without deciding, that it was proper to consider the medical reports contained in the Workers' Compensation Division file, there still would not be substantial evidence to support the judgment of the Workers' Compensation Court.

The determinative issue is whether or not the judgment of the Workers' Compensation Court was supported by substantial evidence insofar as that court determined that there was no causal relationship between appellant's industrial accident and his disability at the time of the hearing. The Court must look to all of the evidence which was properly before the Workers' Compensation Court in determining whether or not there was substantial evidence to support its conclu-

sion of law no. 4:

> "That the claimant has failed to prove by a preponderance of the credible evidence that his present symptoms and complaints are related to the accident of October 7, 1975."

The standard of review to be applied to this case is well established:

> "Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision." Steffes v. 93 Leasing Co., Inc. (1978), ___ Mont. ___, 580 P.2d 450, 452-453, 35 St.Rep. 816, 818.

See also Dumont v. Wickens Bros. Const. Co. (1979), ___ Mont. ___, 598 P.2d 1099, 1106, 36 St.Rep. 1471; Robins v. Anaconda Aluminum Co. (1978), ___ Mont. ___, 575 P.2d 67, 35 St.Rep. 213; Bond v. St. Regis Paper Co. (1977), ___ Mont. ___, 571 P.2d 372, 34 St. Rep. 1237. The Workers' Compensation Court made a conclusion of law which is not contested here, conclusion no. 2:

> "That the claimant, Walter Hume, sustained injuries to his neck and upper back in an industrial accident while employed by the defendant, St. Regis Paper Company, at Libby, Montana on October 7, 1975."

It is not seriously disputed that at the time of the hearing appellant was experiencing disabling pain and muscle spasms. Thus the issue is narrowed to the question of causation. As stated by respondent in its brief, "[t]he real question facing the Workers' Compensation Court was whether the symptoms and complaints after his benefits were terminated in May 1977 were related to his industrial accident."

A summary of the evidence includes claimant's testimony

that previous to the October 7, 1975 injury he experienced none of the burning pain sensation in the area of his lower neck and upper back which he has experienced to varying degrees since that time. Beginning on October 9, 1975 and continuing for about three weeks thereafter, he was seen by a Libby chiropractor and given heat treatments. Claimant testified that several months later, in February or March, 1975, he was injured in a second work-related accident when a load of lumber tipped over on him, hitting him on the shoulder. He testified that this accident aggravated the symptoms of burning pain in his neck and upper back which he had experienced in the October 7, 1975 injury. On June 12, 1976, claimant was examined by a second Libby chiropractor who diagnosed a cervical sprain with radiculitis and paresthesia to both arms. This second chiropractor treated claimant with diathermy, ultrasound, hotpacks and manipulations, and referred him to Dr. Nelson, the Kalispell neurologist who became his treating physician.

Dr. Nelson testified that he performed a neurological examination of claimant on August 3, 1976 and subsequently ordered a cervical myelogram to be performed. He diagnosed the injury as a cervical radiculitis, post traumatic. On August 12, 1976, Dr. Muller, a Kalispell radiologist, reported the results of his examination of the cervical myelogram. His report states that the myelogram revealed several small metallic foreign bodies in the soft tissues of the neck, but an otherwise normal cervical spine. These metallic fragments are the result of a shrapnel injury the claimant suffered in Vietnam. Dr. Nelson testified that on the basis of their size and location, he was of the opinion that they were not the cause of the claimant's causalgia. Dr. Nelson referred

the claimant to Dr. Vincent, a Spokane neurosurgeon for consultation.  Dr. Vincent's report of January 19, 1977 to Dr. Nelson indicates that the "myelogram basically is normal" and that "the problem would seem to be primarily that of muscle tightness and spasm."  At the request of defendant's insurance director, claimant was examined by Dr. Lynch, a neurosurgeon practicing in Spokane, who reported on May 4, 1977 that claimant has a chronic cervical syndrome.  Dr. Lynch's letter to defendant's insurance director stated:

> "The entire neurological examination is normal at this time.  He even shows some callousing of the hands indicating that he is keeping rather active.  The muscle tone is excellent, indicating also that he is staying quite active.
>
> "I can define no definite injury in this patient and feel that his chronic pain probably is more psychogenic in origin, than due to tissue injury. The muscle tone and callousing of the hands would bely the fact that he is incapacitated.
>
> "I feel the patient probably should try to re-educate himself outside this heavy work and I feel there is absolutely no therapy that is going to be of benefit to this patient and no further investigation is indicated."

Dr. Nelson was the only medical witness to testify at the October 4, 1977 hearing.  In finding of fact no. 17, the Workers' Compensation Court made reference to Dr. Nelson's testimony that "claimant's injury was consistent with his present symptoms and disability" and to Dr. Nelson's testimony that in his opinion, the shrapnel fragments imbedded in claimant's neck have nothing to do with his present condition.

The Workers' Compensation Court finding of fact no. 16 stated:

> "On May 26, 1977, Dr. Nelson again examined claimant but was unable to state a precise diagnosis. He found the claimant 100 percent impaired but did not relate it to the industrial accident of October 10, [sic] 1975." (Emphasis added.)

Dr. Nelson's testimony contradicts finding of fact no. 16.

"Q. Your first diagnosis of causalgia and brachial plexitis, do you have an opinion within a reasonable medical certainty as to the cause of these conditions?
"A. The brachial plexitis and causalgia, yes. It was my opinion that these were related to stretch injury to his neck and shoulder girdle as related in his history given about injury occurring while at work.

"Q. How is it that you ruled out the shrapnel in making that finding?
"A. As we said, these fragments are highly discrete, very small and not located in an area that could involve that many nerves." (Tr., p. 11.)

". . .

"Q. Now, the brachial plexitis, what is it?
"A. Well, those nerves that come from between the vertebrae C-5, 6, 7, 8 and T-1 are the nerve roots on both sides comprising the brachial plexus and they're called that because they supply the shoulder girdle and the arm and hand.

"Q. And--
"A. And those nerves, the whole group of them, if they are involved in a process are called the brachial plexitis because we're involving ourselves now with more than one nerve root on both sides of the neck, and that would take an extraordinary lesion in order to accomplish this. It is why I had felt the initial evaluation of the patient that this was the result of yanking motion and it was a stretch injury which we felt was going to be a long-term, difficult problem in terms of healing.

"Q. Now, Doctor, you observed on film the shrapnel?
"A. Yes.

"Q. Where is the shrapnel located?
"A. It's located in the paracervical muscle bundles, and the largest piece of fragment if we reduced it back to size from the film is probably about two to three millimeters in diameter, and it is about in relationship to half the size of a pea, let's say. It is not located, in my estimation, in any region which could affect the nerve root, it's too far away from the nerve root. (Tr., p. 10.)

". . .

"Q. Did you have cause to perform any additional examinations or do any additional diagnostic work with respect to Mr. Hume's condition?

"A.  Well, we did mostly therapy for some time. We had medication and we tried trigger point injection with Xylocaine and other medications into the pain sites to see if it would relieve the pain.  It was only temporarily effective during the time of treatment.  We continued to have difficulty in controlling these symptoms and as time passed, it became more apparent to me that the patient was talking about a causalgic-like pain.  And I have personally examined him on several occasions where he has a burning sensation.  He talks about a--and if you were to drape a towel around your neck, the zone of the neck and shoulder girdle would ache.

"Q.  Is this something that you can actually visually see?
"A.  Yes.  You see that it is hypersensitive to touch at that point in time, and it is increased in temperature, it's warm.  We describe that as a causalgia which you will see in my reports where I have a cervical radiculitis and causalgia--simply stretch or injury to the automatic nerve fibers that are within all of the nerves, and they create these kinds of unpleasant burning and irritative type feelings and are vexing and difficult to treat.  Very few things in the way of medication or treatment are effective.  (Tr., p. 8-9.)

Dr. Nelson's report of May 16, 1977, which is part of

the Workers' Compensation file, states the following:

"IMPRESSION:  Cervical radiculitis and/or causalgia secondary to trauma to the neck and shoulder girdle as previously described.

"DISCUSSION:  It is extremely difficult to pin down a precise diagnosis of neurologic disease since we have documentations of his having normal myelography. I have a strong suspicion that this patient may well have an inflammatory reaction going on systemically.

". . .

"It appears to me that this patient continues to have a very persistent, burning paresthesias of the cervical, thoracic, and upper shoulder girdle which defy any precise diagnosis evaluation in terms of herniated disc or demonstrable loss of muscle mass or power. . ."

On December 20, 1977, claimant was examined by Dr. Dewey,

a Missoula neurosurgeon whose report stated:

"There is no injury to this man's nervous system other than that referable to the left ulnar nerve.  The symptoms are certainly not

-12-

consistent with normal myelography and normal neurologic exam."

In summary, the lower court's crucial finding of fact no. 16 is contradicted by the testimony of Dr. Nelson, which apparently was given little or no weight. Contrary to the lower court's findings, Dr. Nelson's unrefuted testimony did relate Walter Hume's impairment to the industrial accident of October 10, 1975.

An examination of the entire record reveals that the only credible sustantial evidence as it concerns causation and injury supports the claimant and therefore the findings, conclusions, and judgment of the Workers' Compensation Court are not supported by the record. In particular, there is no substantial evidence to support the lower court's conclusion of law no. 4 that claimant failed to prove that his present symptoms and complaints are related to the industrial accident.

In conclusion of law no. 2, the Workers' Compensation Court determined that "claimant, Walter Hume, sustained injuries to his neck and upper back in an industrial accident while employed by the defendant St. Regis Paper Company, at Libby, Montana on October 7, 1975." It is a rebuttable presumption "[t]hat a thing once proved to exist continues as long as is usual with things of that nature." Section 26-1-602(32), MCA. Termination of benefits by the employer on May 25, 1977 was improper in the absence of any intervening cause or any alternative explanation for claimant's present, undisputedly painful and disabling condition.

The judgment is reversed and remanded to the Workers' Compensation Court with instructions to enter judgment for claimant in accordance with this opinion.

_____
                          Justice

We concur:


_____
     Chief Justice


_____
     Justices


Mr. Chief Justice Frank I. Haswell:

        I concur in the result.


_____
              Chief Justice


-14-