No. 84-180

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

JESSE R. SHUPERT,

        Claimant and Appellant,

   -vs-

THE ANACONDA ALUMINUM COMPANY,
        Employer,

   and

THE ANACONDA ALUMINUM COMPANY,

        Defendant and Respondent.

APPEAL FROM:   Workers' Compensation Court, The Honorable Timothy
               Reardon, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         Terry N. Trieweiler, Whitefish, Montana

     For Respondent:

         James Vidal, Kalispell, Montana

Submitted on Briefs:  Feb. 8, 1985

Decided:  March 7, 1985

Filed: MAR  1985

*Ethel M. Harrison*

————————————————————
              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Claimant, Jesse R. Shupert, filed a petition with the Workers' Compensation Court, Flathead County, seeking compensation for injuries suffered during his employment with defendant, Anaconda Aluminum Company, in Columbia Falls, Montana. Claimant appeals the denial of his petition.

On April 11, 1978, claimant was working as a pot reliner. While using a jackhammer to lift metal pads off a pot, he injured his back. The following day, claimant went to Dr. Peter Pisk, a chiropractor. Dr. Pisk diagnosed the injury as a fracture of the right fifth lumbar vertebrae. The defendant paid temporary total disability benefits to the claimant at the rate of $174 per week from April 14, 1978, until October 29, 1978.

On May 17, 1978, claimant went to see Dr. Jack Hilleboe, an orthopedic surgeon. Dr. Hilleboe stated claimant sustained a herniated nucleus pulposis between the fourth and fifth lumbar vertebrae. Dr. Hilleboe referred claimant to Dr. Gary Cooney, a neurologist in Missoula. Dr. Cooney concurred in Dr. Hilleboe's diagnosis. Dr. Cooney treated the claimant with bed rest, physical therapy, heat, ultrasound, massage and analgesic/anti-inflammatory drug therapy. When claimant did not improve with this course of treatment, Dr. Hilleboe referred him to another neurologist, Dr. Steve Johnson. Dr. Johnson reported the cause of claimant's back pain was unclear, but advised claimant "not to be in a job which entailed lifting." Unable to find the etiology of claimant's pain, Dr. Hilleboe concluded claimant's problem was psychological. When his condition failed to improve, claimant sought further evaluation from the Missoula

2

Community Hospital Pain Clinic and the Virginia Mason Center in Seattle.

Claimant returned to work on a part-time basis for Anaconda on October 30, 1978, and continued in that capacity until May 1979 when he returned to work full-time, working as a pot reliner.

On November 26, 1980, claimant re-injured his back while using a 25-pound iron "Postman's Bar" to break the crust out of the burners. Claimant testified "he had to work in a bent over position, and when he straightened he felt a pain in his lower back" that radiated down his left leg. Claimant discontinued working and received disability benefits from November 28 until December 17, 1980. Claimant returned to work on December 17, 1980, and drove an ore truck. Due to lack of seniority, he was returned to the labor pool and was again unable to perform the duties of a laborer. Claimant left the employ of Anaconda.

Claimant was last seen by Dr. Hilleboe on November 12, 1981. At that time Dr. Hilleboe referred the claimant to Dr. Robert Schimpff. Dr. Schimpff testified that the measurement of claimant's thigh muscles varied by three centimeters. Dr. Schimpff attributed the atrophy to disuse of the left thigh. The claimant was also unable to dorsiflex his toes. Dr. Schimpff ordered an electromyelogram and diagnosed the injury to the nerve root of the fifth lumbar vertebrae causing denervation of the muscles innervated by the L-5 nerve root. Dr. Schimpff referred claimant to a Spokane radiologist, Dr. William Tubbs. A CAT Scan report showed a central bulging disk between the fourth and fifth lumbar vertebrae. Dr. Schimpff testified that he and Dr. Cooney were unable to demonstrate if a nerve root was compressed. Dr. Schimpff

3

restricted claimant's activities on January 4, 1982, which included "no heavy lifting, excess walking or standing." Dr. Schimpff has continued to see the claimant.

On December 14, 1982, the claimant was examined by Dr. Dean Ross, a specialist in physical medicine and rehabilitation. Dr. Ross concluded claimant had a double scoliosis in his spine which made him more susceptible to mechanical injury to his back. He found a prominent right paraspinous muscle resembling a muscle spasm. Based upon his examination, a review of the medical records and test results, he testified that, in his opinion, there was nerve root injury to his L-5 nerve root and also a component of soft tissue injury. He further testified that he did not consider it a psychiatric illness or anything over which the patient had control.

Kevin Murphy, a specialist in rehabilitation psychology, testified that he saw the claimant on December 14, 1982. Dr. Murphy interviewed the claimant and administered behavioral and assessment tests. It was Dr. Murphy's opinion that claimant did not have a hysterical personality, nor was he making up his complaints of pain.

Claimant was unable to return to employment since December 8, 1981. Claimant's disability benefits were terminated on March 2, 1982. Anaconda refused to pay any further disability benefits. Claimant petitioned the Workers' Compensation Court to find that he was totally disabled and entitled to total disability benefits at the maximum rate. A hearing was held on May 31, 1983. Claimant, his wife, and two vocational rehabilitation counselors testified. Four medical experts testified by deposition: John Hilleboe, M.D., an othopedic surgeon; Robert Schimpff, M.D., a

neurologist; Dean Ross, M.D., a psychiatrist and Kevin Murphy, a psychology and rehabilitation specialist. The deposition testimony was admitted into evidence by the Workers' Compensation Court.

The Workers' Compensation Court found that claimant did injure his back on April 11, 1978, during the course of his employment with the defendant, Anaconda Aluminum Company. The Workers' Compensation Court also found that the claimant reinjured his lower back on November 26, 1980, with the same employer. The Workers' Compensation Court concluded the claimant recovered from those injuries by December 8, 1980, and any disability claimant now suffers is not the result of either of the two prior injuries.

Claimant presents three issues on appeal:

(1) Whether the judgment of the Workers' Compensation Court was supported by substantial evidence, or did the court err in relying upon the testimony of John W. Hilleboe, M.D., as substantial evidence?

(2) Whether the Workers' Compensation Court's finding was incorrect in concluding that there was no testimony relating claimant's current symptoms to his original injury.

(3) Whether the court erred in concluding that claimant's condition at the time of hearing was not a work-related injury.

The Workers' Compensation Court in its findings of fact and conclusions of law cited to Dr. Hilleboe's testimony:

> "The most the claimant has been able to prove is that his symptoms (not found as facts because not necessary to the disposition of this case) are consistent with a L-5 nerve root injury. Consistency is not causality. The claimant's treating physician, Dr. Hilleboe, was adamant that there was nothing orthopedically wrong with the claimant; . . ."

5

Claimant submits the following exerpts from Dr. Hilleboe's testimony are highly improbable, incredible and insufficient and therefore, does not constitute substantial evidence:

(1) Hilleboe testified that when he examined the claimant, shortly after his April, 1978, injury, he was of the opinion that claimant had sustained a herniated nucleus pulposis between the fourth and fifth lumbar vertebrae and that a herniated disk can leave permanent damage to the nerve root. However, later Hilleboe testified he found no objective physical signs of injury.

(2) One objective sign of injury is an abnormal curve in the spine or scoliosis. Hilleboe testified that he found none. However, Dr. Cooney, the neurologist to whom Hilleboe referred the claimant found scoliosis in claimant's spine and felt that it was the result of muscle spasm on the left side of claimant's spine.

(3) Irritation to the fifth lumbar nerve root, would cause a muscle spasm in the back. Dr. Hilleboe testified that he found no muscle spasm. His testimony was contradicted by Dr. Cooney, Dr. Ross and the examination performed at the Virginia Mason Center.

(4) Dr. Hilleboe testified that he found no atrophy of claimant's leg. His observation was inconsistent with the defendant's doctor and Dr. Schimpff who reported more than a one-inch reduction in the circumference of claimant's left thigh.

(5) Dr. Hilleboe concluded that there was no evidence of injury to the claimant's fifth lumbar nerve root in spite of more than one electromyelographic exam which established that there was. Dr. Johnson indicated that his EMG

examination indicated irritation of the muscles on the front of claimant's calf. Dr. Schimpff also found positive results from his EMG indicating that the muscles in claimant's left extremity which were innervated by the fifth lumbar nerve root were impaired.

(6) Dr. Hilleboe refused to consider whether injury to claimant's spinal soft tissues could have resulted from the same trauma that caused the fracture in his transverse process because it was his opinion that that fracture could not have occurred on April 11, 1978. Dr. Pisk disagreed. After an examination of the claimant's x-ray film taken by Dr. Pisk on April 12, 1978, and that taken by Dr. Hilleboe on May 17, 1978, Dr. Schimpff also disagreed.

(7) Not having found what he felt was "objective evidence" of injury, Hilleboe concluded that claimant's problem was psychological. Dr. Murphy, the only witness qualified to express a psychological opinion, testified that claimant had neither a hysterical personality, nor an emotional disturbance of any other type. It was his opinion that claimant was not making up his complaints of pain.

Claimant further contends Dr. Hilleboe's testimony is untimely. Claimant points out that Dr. Hilleboe had not seen claimant during the period of disability December 8, 1981 until March 2, 1982.

Anaconda responds Dr. Hilleboe's testimony is amply supported by substantial expert opinion. Anaconda states the Workers' Compensation Court did not rely exclusively on Dr. Hilleboe's report but also cited to reports from an array of experts. Claimant argues the reports are irrelevant to a determination of his disability because he re-injured his back on November 26, 1980. Other physicians have examined

7

him subsequent to his second injury and have found evidence of injury.

We are guided by a very basic and limited standard of review. This Court will not substitute its judgment for that of the Workers' Compensation Court concerning the credibility of the witnesses or the weight to be given their testimony. Dumont v. Wickens Bros. Construction (1979), 183 Mont. 190, 598 P.2d 1099; Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 580 P.2d 450. Where the findings are based on conflicting evidence, our function of review is confined to determining whether there is substantial evidence supporting such findings. Harmon v. Deaconess Hospital (Mont. 1981), 623 P.2d 1372, 38 St.Rep. 65; Jensen v. Zook Bros. Construction Co. (1978), 178 Mont. 59, 582 P.2d 1191.

In the instant matter, the record on appeal consists mainly of testimony by deposition. Accordingly, this Court's function on review is different. In a recent Supreme Court decision, Lamb v. Missoula Imports, Inc. (Mont. 1984), 684 P.2d 498, 41 St.Rep. 1414, we stated this Court may determine the proper weight of critical medical testimony entered through depositions:

> "Ordinarily, this Court will not substitute its judgment for that of the Workers' Compensation Court in determining the weight and credibility to be given testimony. The reason for this is that this Court defers to the lower court's assessment of the demeanor and credibility of witnesses. Rule 52(a), M.R.Civ.P. However, when the critical evidence, particularly medical evidence, is entered by deposition, we have held that 'this Court, although sitting in review, is in as good a position as the Workers' Compensation Court to judge the weight to be given to such record testimony, as distinguished from oral testimony, where the trial court actually observes the character and demeanor of the witness on the stand.' Hert v. J. J. Newberry Co.

(1978), 178 Mont. 355, 359-360, 584 P.2d 656, 659."

A review of the medical experts' depositions reveals a sharp conflict in the medical evidence presented, particularly in regard to the injury. Dr. Hilleboe testified that later in his course of treatment of claimant, he found no objective physical signs of injury and concluded that claimant's problem was psychological. Dr. Schimpff and Dr. Ross testified that the electromyographic examination indicated L-5 nerve root impairment. The physicians stated the EMG findings were an objective sign of injury to the claimant's back. Furthermore, Dr. Murphy testified that claimant was not making up his complaints of pain nor was he feigning disability or pain in order to gather some secondary gain. We see no reason to accord Dr. Hilleboe's testimony any greater weight than the testimony of the other three medical experts. We hold the testimony of Dr. Hilleboe did not amount to substantial evidence.

Claimant next claims error in the Workers' Compensation Court's conclusion that there was no testimony relating claimant's current symptoms to his original injury. Claimant contends that Hume v. St. Regis (1980), 187 Mont. 53, 608 P.2d 1063, governs the outcome of this present matter. In Hume, the claimant was injured on October 7, 1975 when he stretched muscles in his shoulder and lower neck while working at a paper company. He continued to work for ten months, during which time he received a second injury. He stopped working on August 6, 1976. A neurologist reported that appellant's chronic pain probably is more psychogenic in origin, than due to tissue injuries. Defendant terminated benefits to claimant. The Workers' Compensation Court denied

9

benefits, concluding that claimant failed to prove that his symptoms were related to his October 7, 1975 injury. Claimant appealed. This Court reversed the Workers' Compensation Court's ruling and stated that the employer's termination of total disability benefits to the employee was improper. "There is no substantial evidence to support the lower court's conclusion . . . that claimant failed to prove that his present symptoms and complaints are related to the industrial accident." Hume, 187 Mont. at 64, 608 P.2d at 1089. The Workers' Compensation Court in the present case found that claimant did sustain injury on April 11, 1978 during the course of his employment with Anaconda. The court also found that claimant re-injured his back on November 26, 1980 with the same employer. The court concluded claimant recovered from those injuries by December 8, 1980. As was the case in Hume, the Workers' Compensation Court chose to ignore the testimony regarding causation subsequent to claimant's termination. The testimony of the claimant and Dr. Schimpff did relate claimant's present disability to the original injury.

Dr. Shimpff testified:

> "Q. [By Mr. Trieweiler] Did you form an impression as a result of the electromyogram?
>
> "A. I did.
>
> "Q. What was your impression?
>
> "A. I thought the findings suggested partial denervation of muscles innervated by L5 nerve root.
>
> "Q. And by denervation, what do you mean?
>
> "A. That there has been injury to the nerve fibers going to those muscles and in this case those muscles received their primary innervation from the L5 nerve root.

" . . .

"Q. Have you seen Mr. Shupert since December 28, 1981?

"A. Yes, I have.

"Q. Could you tell me for the record on how many occasions you have seen him? Not counting the times when you just filled out a form for him.

"A. I saw him on 5-6-82, on 11-2-82 and on 1-10-83.

"Q. As a result of your examinations and treatment of Mr. Shupert, have you formed any opinion regarding the cause of his complaints of back pain and leg pain?

"A. I think the most consistent information is that he is suffering from an L5 radiculopathy. I presume that it's related to his earlier injury in 1978 and have been unable to demonstrate a structural abnormality but have demonstrated a suttle [sic] electrical abnormality and physical examination has been consistent with that diagnosis. . . "    (Emphasis added.)

The claimant testified as to the manner the original injury

presently impairs him:

"Q. [By Mr. Trieweiler]  Have you ever been to any form of employment since you left the Anaconda Company in December of 1981?

"A. No, I haven't.

"Q. Do you feel you're capable of doing heavy physical work in your present condition?

"A. No. because I tried it and it hasn't worked out.

"Q. How has it affected you?

"A. It's affected me on my walking on hard pavement, hard concrete, and lifting, bending, too.

"Q. How does it affect your bending and lifting?

"A. When I bend over, the lifting, I just can't do it, it aggravates it worse, and I don't get any better.

11

"Q. Do you have any specialized training or job experience that qualifies you for jobs that don't require heavy physical labor?

"A. No, I have none."

An examination of the record reveals that the only credible substantial evidence as it concerns causation and injury supports the claimant. We hold there is no substantial evidence to support the lower court's finding that claimant failed to prove his disability was the result of the two injuries.

Finally, claimant urges that an injury once established must be presumed to continue until proven otherwise. The claimant again cites to Hume in support of his contention. "It is a rebuttable presumption 'that a thing once proved to exist continues as long as is usual with things of that nature.' Section 26-1-602(32), MCA." 608 P.2d at 1069. Anaconda responds that Hume does not apply because no testimony established any substantial link between the 1978 incident and the claimant's present complaints of pain. The record speaks for itself. The foregoing medical testimony of Dr. Schimpff clearly established that the claimant met his burden to prove that his present symptoms are related to the original injury.

Moreover, the Montana Legislature has mandated that the Workers' Compensation Act be liberally construed in favor of the claimant. Section 39-71-104, MCA. This Court requires the same. Klein v. Indep. Wholesale Assoc. Grocers (1975), 167 Mont. 341, 538 P.2d 1358; Stokes v. Delaney & Sons, Inc. (1964), 143 Mont. 516, 391 P.2d 698. We deal with many individuals from all walks of life; not all are sophisticated, nor all highly educated. The claimant is a working man.

He is a person whose livelihood is at the mercy of his own health. The policy underlying the Workers' Compensation Act cannot be defeated by narrow and technical construction.

Accordingly, we hold a termination of benefits by Anaconda was improper upon finding the claimant was disabled, and absent any intervening cause or alternative explanation for claimant's present, undisputed painful and disabling condition.

The judgment is reversed and remanded to the Workers' Compensation Court with instructions to enter judgment for claimant in accordance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice Frank B. Morrison, Jr., specially concurring.

I concur in the result for the reason that Dr. Hilleboe did not provide substantial credible evidence for the findings of the Workers' Compensation Court.

At the time Dr. Hilleboe was examined for the purpose of refuting any permanent injury related to the subject accident, he was not asked whether he had an opinion, based upon a reasonable degree of medical probability, as to whether claimant suffered any permanent injury related to the accident. Instead, Dr. Hilleboe was asked whether there was any "objective" evidence of nerve root irritation and the answer was that there was not. Counsel then again tried to approach the problem after objections by opposing counsel. The following questions and answers were given:

"Q. Okay, in terms of a permanent condition.

"A. What in terms of a permanent condition?

"Q. Let me rephrase that question and ask, in terms of your finding a permanent condition regarding a L5 nerve root or nerve root or soft tissue injury in the claimant.

"A. I didn't find anything."

Here, again, the doctor is giving testimony with respect to "objective" findings of injury. He is not expressing an opinion, based upon a reasonable degree of medical probability, that the claimant did not, in fact, suffer a permanent injury.

The only testimony that could support the findings of the Workers' Compensation Court relate to the following volunteer statement on the part of Dr. Hilleboe:

"The reason for his multiple referrals is that I feel that this gentleman does not have an orthopedic problem. I don't think he has a neurologic problem. I think he has a psychological problem and that he should see a psychiatrist."

14

This testimony was not based upon the proper evidentiary standards and should have been stricken from the record.

There is no place in this record where Dr. Hilleboe gives an opinion, based upon a reasonable degree of medical probability, that the claimant suffered no permanent injury casually related to the subject accident. I do not consider the non-responsive, volunteer statement of Dr. Hilleboe attributing claimant's problems to a psychogenic origin, to be substantial credible evidence for support of the Workers' Compensation Court findings.

Therefore, I concur to reverse.

_____
Justice

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion. I agree with the standard of review stated in the majority opinion, that where the findings are based on conflicting evidence, our review is confined to determining whether there is substantial evidence to support the findings. I also agree with the majority's statement that a review of the medical experts' depositions reveals a sharp conflict in the medical evidence presented.

The majority then refers to various medical evidence which supports the claimant and concludes that there is no substantial evidence to support the finding that claimant failed to prove his disability resulted from the two injuries. I disagree with that conclusion as I do find substantial evidence to support the finding.

The majority relies on the testimony of Dr. Schimpff. I do not find an adequate basis for reliance on his testimony. It is true that Dr. Schimpff testified that he thought the electromyogram suggested partial denervation of muscles innervated by the L5 nerve root. That testimony did indicate the possibility of injury to the L5 nerve root. However, as Dr. Schimpff pointed out, that was not conclusive so he sent the claimant on for a CAT scan, which was completed in Spokane. It showed a central bulging disk at the L4-5 level, but was essentially negative. In other words, the CAT scan failed to show any reason for his condition.

Following the CAT scan, a myelogram was performed in the hospital at Kalispell. The examining doctor concluded that the myelogram study was essentially normal, that there was a slight change in the anterior margin at the L4-5 level but that this change was not proof of a bulging disk or abnormal-

16

ity.   Dr. Schimpff agreed with the conclusion that the myelogram was essentially normal.

Following is the question asked by plaintiff's counsel and Dr. Schimpff's complete answer:

> "Q.  As a result of your examinations and treatment of Mr. Shupert, have you formed any opinion regarding the cause of his complaints of back pain and leg pain?
>
> "A.  I think the most consistent information is that he is suffering from an L5 radiculopathy.   I presume that it's related to his earlier injury in 1978 and have been unable to demonstrate a structural abnormality but have demonstrated a suttle [sic] electrical abnormality and physical examination has been consistent with that diagnosis although there have been other facets of his examination which have been confusing to myself and a variety of other physicians who have seen him in consultation."

Note that his testimony does not show a direct connection to the 1978 injury.   It is true that he concludes the most consistent approach is that he is suffering from an L5 radiculopathy, but he also points out that there are other facets of the examination which have been confusing to him and the variety of other physicians who have seen the claimant.

The foregoing testimony must be considered along with the following testimony by Dr. Schimpff on cross examination:

> "A. . . . So, I guess my best summary is that I personally was suspicious that there was an L5 nerve root injury and in looking for a possible remedial abnormality such as a herniated disc, a bone spur that would press on the nerve root or other abnormality, I was not able to find one.
>
> "Subsequently Mr. Shupert's examination changed somewhat.   It changed when he was seen by Dr. Cooney and then it changed when I saw him in November of '82 and then in January of '83.   Some of the earlier findings were no longer present. At that point however he was still having discomfort.  The cause of his discomfort I thought was ambiguous and the cause of

17

> it <u>was</u> <u>uncertain</u>. Early on I thought it
> <u>was</u> an L5 nerve root compression or
> injury and I still feel that that is a
> <u>possibility</u> for his continued discom-
> fort." (emphasis supplied)

This summarizes Dr. Schimpff's view that he was not able to find an abnormality which explained the condition. He points out that the cause of the discomfort was ambiguous and uncertain. Last, Dr. Schimpff in substance states there is a possibility of an L5 nerve root compression or injury. That does not in itself constitute a diagnosis of the claimant's condition. This is consistent with Dr. Schimpff's case notes of his examination of the claimant on January 10, 1983, where he stated:

> "IMPRESSION: Recurrence of lumbosacral
> back pain, etiology [cause] uncertain."

As of January 10, 1983, Dr. Schimpff was uncertain as to the cause of claimant's pain.

Reference has been made to Dr. Cooney's report. With regard to his conclusions, Dr. Cooney stated the following with regard to the claimant:

> "IMPRESSION: Low back pain and left
> lower extremity pain of uncertain
> etiology. The patient's low back com-
> plaints appear to be aggravated by vari-
> ous types of activities which I feel he
> should avoid. To date, no definite
> diagnosis has been made to explain these
> symptoms. A significant root compression
> injury has been quite thoroughly excluded
> with myelography and lumbar CT scanning.
> He has not responded well to muscle
> relaxants and analgesics in the past."

Dr. Cooney must be placed in the camp of those who have no opinion as to the cause of plaintiff's condition.

With regard to the contention that there is a signifi-cant problem at the L4-5 level, following was Dr. Hilleboe's testimony:

> "Q. Doctor, I just have a couple ques-
> tions after this cross examination. I
> will again ask you, in your opinion, did

18

you find objective evidence of an L5 nerve root irritation or disc problem or soft tissue problem in Mr. Shupert?

"A. No.

". . .

"Q. Okay, but in essence then, you stick by your opinion that you could find no objective signs of the L5 nerve root irritation, disk problem or soft tissue injury.

"A. I could not find any. As far as his back was concerned. On one occasion he had a shoulder problem and a leg problem.

". . .

"Q. Let me rephrase that question and ask, in terms of you finding a permanent condition regarding an L5 nerve root or nerve root or soft tissue injury in the claimant.

"A. I didn't find anything."

In substance, Dr. Hilleboe found no basis for concluding there was damage or injury to the L5 nerve root. Dr. Schimpff does not actually disagree but merely states that is a "possibility."

While it is true that there is conflicting evidence, it seems clear to me that the foregoing evidence constitutes substantial evidence supporting the findings of the Workers' Compensation Court.

I would affirm.

_____
Justice

I join in the foregoing dissent of Mr. Justice Fred J. Weber.

_____
Justice

19