MR. JUSTICE HARRISON
delivered the Opinion of the Court.
Claimant, Jesse R. Shupert, filed a petition with the Worker’s Compensation Court, Flathead County, seeking compensation for injuries suffered during his employment with defendant, Anaconda Aluminum Company, in Columbia Falls, Montana. Claimant appeals the denial of his petition.
On April 11, 1978, claimant was working as a pot reliner. While using a jackhammer to lift metal pads off a pot, he injured his back. The following day, claimant went to Dr. Peter Pisk, a chiropractor. Dr. Pisk diagnosed the injury as a fracture of the right fifth lumbar vertebrae. The defendant paid temporary total disability benefits to the claimant at the rate of $174 per week from April 14, 1978, until October 29, 1978.
On May 17,1978, claimant went to see Dr. Jack Hilleboe, an orthopedic surgeon. Dr. Hilleboe stated claimant sustained a herniated nucleus pulposis between the fourth and fifth lumbar vertebrae. Dr. Hilleboe referred claimant to Dr. Gary Cooney, a neurologist in Missoula. Dr. Cooney concurred in Dr. Hilleboe’s diagnosis. Dr. Cooney treated the claimant with bed rest, physical therapy, heat, ultrasound, massage and analgesic/anti-inflammatory drug therapy. When claimant did not improve with this course of treatment, Dr. Hilleboe referred him to another neurologist, Dr. Steve Johnson. Dr. *184 Johnson reported the cause of claimant’s back pain was unclear, but advised claimant “not to be in a job which entailed lifting.” Unable to find the etiology of claimant’s pain, Dr. Hilleboe concluded claimant’s problem was psychological. When his condition failed to improve claimant sought further evaluation from the Missoula Community Hospital Pain Clinic and the Virginia Mason Center in Seattle.
Claimant returned to work on a part-time basis for Anaconda on October 30, 1978, and continued in that capacity until May 1979 when he returned to work full-time, working as a pot reliner.
On November 26, 1980, claimant reinjured his back while using a 25-pound iron “Postman’s Bar” to break the crust out of the burners. Claimant testified “he had to work in a bent over position, and when he straightened he felt a pain in his lower back” that radiated down his left leg. Claimant discontinued working and received disability benefits from November 28 until December 17,1980. Claimant returned to work on December 17,1980, and drove an ore truck. Due to lack of seniority, he was returned to the labor pool and was again unable to perform the duties of a laborer. Claimant left the employ of Anaconda.
Claimant was last seen by Dr. Hilleboe on November 12, 1981. At that time Dr. Hilleboe referred the claimant to Dr. Robert Schimpff. Dr. Schimpff testified that the measurement of claimant’s thigh muscles varied by three centimeters. Dr. Schimpff attributed the atrophy to disuse of the left thigh. The claimant was also unable to dorsiflex his toes. Dr. Schimpff ordered an electromyogram and diagnosed the injury to the nerve root of the fifth lumbar vertebrae causing denervation of the muscles innervated by the L-5 nerve root. Dr. Schimpff referred claimant to a Spokane radiologist, Dr. William Tubbs. A CAT Scan report showed a central bulging disk between the fourth and fifth lumbar vertebrae. Dr. Schimpff testified that he and Dr. Cooney were unable to demonstrate if a nerve root was compressed. Dr. Schimpff restricted claimant’s activities on January 4, 1982, which included “no heavy lifting, excess walking or standing.” Dr. Schimpff has continued to see the claimant.
On December 14, 1982, the claimant was examined by Dr. Dean Ross, a specialist in physical medicine and rehabilitation. Dr. Ross concluded claimant had a double scoliosis in his spine which made him more susceptible to mechanical injury to his back. He found a prominent right paraspinous muscle resembling a muscle spasm. Based upon his examination, a review of the medical records and *185 test results, he testified that, in his opinion, there was nerve root injury to his L-5 nerve root and also a component of soft tissue injury. He further testified that he did not consider it a psychiatric illness or anything over which the patient had control.
Kevin Murphy, a specialist in rehabilitation psychology, testified that he saw the claimant on December 14, 1982. Dr. Murphy interviewed the claimant and administered behavioral and assessment tests. It was Dr. Murphy’s opinion that claimant did not have a hysterical personality, nor was he making up his complaints of pain.
Claimant was unable to return to employment since December 8, 1981. Claimant’s disability benefits were terminated on March 2, 1981. Anaconda refused to pay any further disability benefits. Claimant petitioned the Workers’ Compensation Court to find that he was totally disabled and entitled to total disability at the maximum rate. A hearing was held on May 31, 1983. Claimant, his wife, and two vocational rehabilitation counselors testified. Four medical experts testified by deposition: John Hilleboe, M.D., an orthopedic surgeon; Robert SchimpfF, M.D., a neurologist; Dean Ross, M.D., a psychiatrist and Kevin Murphy, a psychology and rehabilitation specialist. The deposition testimony was admitted into evidence by the Workers’ Compensation Court.
The Workers’ Compensation Court found that claimant did injure his back on April 11, 1978, during the course of his employment with the defendant, Anaconda Aluminum Company. The Workers’ Compensation Court also found that the claimant reinjured his lower back on November 26, 1980, with the same employer. The Workers’ Compensation Court concluded the claimant recovered from those injuries by December 8,1980, and any disability claimant now suffers is not the result of either of the two prior injuries.,
Claimant presents three issues on appeal:
(1) Whether the judgment of the Worker’s Compensation Court was supported by substantial evidence, or did the court err in relying upon the testimony of John W. Hilleboe, M.D., as substantial evidence?
(2) Whether the Workers’ Compensation Court’s finding was incorrect in concluding that there was no testimony relating claimant’s current symptoms to his original injury.
(3) Whether the court erred in concluding that claimant’s condition at the time of hearing was not a work-related injury.
The Workers’ Compensation Court in its findings of fact and conclusions of law cited to Dr. Hilleboe’s testimony:
*186 “The most the claimant has been able to prove is that his symptoms (not found as facts because not necessary to the disposition of this case) are consistent with a L-5 nerve root injury. Consistency is not causality. The claimant’s treating physician, Dr. Hilleboe, was adamant that there was nothing orthopedically wrong with the claimant; . . .”
Claimant submits the following excerpts from Dr. Hilleboe’s testimony are highly improbable, incredible and insufficient and therefore, does not constitute substantial evidence:
(1) Hilleboe testified that when he examined the claimant, shortly after his April, 1978, injury, he was of the opinion that claimant had sustained a herniated nucleus pulposis between the fourth and fifth lumbar vertebrae and that a herniated disk can leave permanent damage to the nerve root. However, later Hilleboe testified he found no objective physical signs of injury.
(2) One objective sign of injury is an abnormal curve in the spine or scoliosis. Hilleboe testified that he found none. However, Dr. Cooney, the neurologist to whom Hilleboe referred the claimant found scoliosis in claimant’s spine and felt that it was the result of muscle spasm on the left side of claimant’s spine.
(3) Irritation to the fifth lumbar nerve root, would cause a muscle spasm in the back. Dr. Hilleboe testified that he found no muscle spasm. His testimony was contradicted by Dr. Cooney, Dr. Ross and the examination performed at the Virginia Mason Center.
(4) Dr. Hilleboe testified that he found no atrophy of claimant’s leg. His observation was inconsistent with the defendant’s doctor and Dr. Schimpff who reported more than a one-inch reduction in the circumference of claimant’s left thigh.
(5) Dr. Hilleboe concluded that there was no evidence of injury to the claimant’s fifth lumbar nerve root in spite of more than one electromyographic exam which established that there was. Dr. Johnson indicated that his EMG examination indicated irritation of the muscles on the front of claimant’s calf. Dr. Schimpff also found positive results from his EMG indicating that the muscles in claimant’s left extremity which were innervated by the fifth lumbar nerve root were impaired.
(6) Dr. Hilleboe refused to consider whether injury to claimant’s spinal soft tissues could have resulted from the same trauma that caused the fracture in his transverse process because it was his opinion that that fracture could not have occurred on April 11,1978. Dr. Pisk disagreed. After an examination of the claimant’s x-ray film *187 taken by Dr. Pisk on April 12, 1978, and that taken by Dr. Hilleboe on May 17, 1978, Dr. Schimpff also disagreed.
(7) Not having found what he felt was “objective evidence” of injury, Hilleboe concluded that claimant’s problem was psychological. Dr. Murphy, the only witness qualified to express a psychological opinion, testified that claimant had neither a hysterical personality, nor an emotional disturbance of any other type. It was his opinion that claimant was not making up his complaints of pain.
Claimant further contends Dr. Hilleboe’s testimony is untimely. Claimant points out that Dr. Hilleboe had not seen claimant during the period of disability December 8, 1981 until March 2, 1982.
Anaconda responds Dr. Hilleboe’s testimony is amply supported by substantial expert opinion. Anaconda states the Workers’ Compensation Court did not rely exclusively on Dr. Hilleboe’s report but also cited to reports from an array of experts. Claimant argues the reports are irrelevant to a determination of his disability because he re-injured his back on November 26, 1980. Other physicians have examined him subsequent to his second injury and have found evidence of injury.
We are guided by a very basic and limited standard of review. This Court will not substitute its judgment for that of the Workers’ Compensation Court concerning the credibility of the witnesses or the weight to be given their testimony. Dumont v. Wickens Bros. Construction (1979), 183 Mont. 190, 598 P.2d 1099; Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 580 P.2d 450. Where the findings are based on conflicting evidence, our function of review is confined to determining whether there is substantial evidence supporting such findings. Harmon v. Deaconess Hospital (Mont. 1981), 623 P.2d 1372, 38 St. Rep. 65; Jensen v. Zook Bros. Construction Co. (1978), 178 Mont. 59, 582 P.2d 1191.
In the instant matter, the record on appeal consists mainly of testimony by deposition. Accordingly, this Court’s function on review is different. In a recent Supreme Court decision, Lamb v. Missoula Imports, Inc. (Mont. 1984), [211 Mont. 360,] 684 P.2d 498, 41 St. Rep. 1414, we stated this Court may determine the proper weight of critical medical testimony entered through depositions:
“Ordinarily, this Court will not substitute its judgment for that of the Workers’ Compensation Court in determining the weight and credibility to be given testimony. The reason for this is that this Court defers to the lower court’s assessment of the demeanor and credibility of witnesses. Rule 52(a), M.R.Civ.P. However, when the *188 critical evidence, particularly medical evidence, is entered by deposition, we have held that ‘this Court, although sitting in review, is in as good a position as the Workers’ Compensation Court to judge the weight to be given to such record testimony, as distinguished from oral testimony, where the trial court actually observes the character and demeanor of the witness on the stand.’ Hert v. J.J. Newberry Co. (1978), 178 Mont. 355, 359-360, 584 P.2d 656, 659.”
A review of the medical experts’ depositions reveals a sharp conflict in the medical evidence presented, particularly in regard to the injury. Dr. Hilleboe testified that later in his course of treatment of claimant, he found no objective physical signs of injury and concluded that claimant’s problem was psychological. Dr. Schimpff and Dr. Ross testified that the electromyographic examination indicated L-5 nerve root impairment. The physicians stated the EMG findings were an objective sign of injury to the claimant’s back. Furthermore, Dr. Murphy testified that claimant was not making up his complaints of pain nor was he feigning disability or pain in order to gather some secondary gain. We see no reason to accord Dr. Hilleboe’s testimony any greater weight than the testimony of the other three medical experts. We hold the testimony of Dr. Hilleboe did not amount to substantial evidence.
Claimant next claims error in the Workers’ Compensation Court’s conclusion that there was no testimony relating claimant’s current symptoms to his original injury. Claimant contends that Hume v. St. Regis (1980), 187 Mont. 53, 608 P.2d 1063, governs the outcome of this present matter. In Hume, the claimant was injured on October 7, 1975 when he stretched muscles in his shoulder and lower neck while working at a paper company. He continued to work for ten months, during which time he received a second injury. He stopped working on August 6, 1976. A neurologist reported that appellant’s chronic pain probably is more psychogenic in origin, than due to tissue injuries. Defendant terminated benefits to claimant. The Workers’ Compensation Court denied benefits, concluding that claimant failed to prove that his symptoms were related to his October 7, 1975 injury. Claimant appealed. This Court reversed the Workers’ Compensation Court’s ruling and stated that the employer’s termination of total disability benefits to the employee was improper. “There is no substantial evidence to support the lower court’s conclusion . . . that claimant failed to prove that his present symptoms and complaints are related to the industrial accident.” Hume, 187 Mont. at 64, 608 P.2d at 1089. The Workers’ Compensa *189 tion Court in the present case found that claimant did sustain injury on April 11, 1978 during the course of his employment with Anaconda. The court also found that claimant reinjured his back on November 26, 1980 with the same employer. The court concluded claimant recovered from those injuries by December 8,1980. As was the case in Hume, the Workers’ Compensation Court chose to ignore the testimony regarding causation subsequent to claimant’s termination. The testimony of the claimant and Dr. Schimpff did relate claimant’s present disability to the original injury.
Dr. Schimpff testified:
“Q. [By. Mr. Trieweiler] Did you form an impression as a result of the electromyogram?
“A. I did.
“Q. What was your impression?
“A. I thought the findings suggested partial denervation of muscles innervated by L5 nerve root.
“Q. And by denervation, what do you mean?
“A. That there had been injury to the nerve fibers going to those muscles and in this case those muscles received their primary innervation from the L5 nerve root.
“Q. Have you seen Mr. Shupert since December 28, 1981?
“A. Yes, I have.
“Q. Could you tell me for the record on how many occasions you have seen him? Not counting the times when you just filled out a form for him.
“A. I saw him on 5-6-82, on 11-2-82 and on 1-10-83.
“Q. As a result of your examinations and treatment of Mr. Shupert, have you formed any opinion regarding the cause of his complaints of back pain and leg pain?
“A. I think the most consistent information is that he is suffering from an L5 radiculopathy. I presume that it’s related to his earlier injury in 1978 and have been unable to demonstrate a structural abnormality but have demonstrated a suttle [sic] electrical abnormality and physical examination has been consistent with that diagnosis . . .” (Emphasis added.)
The claimant testified as to the manner the original injury presently impairs him:
“Q. [By. Mr. Trieweiler] Have you ever been to any form of employment since you left the Anaconda Company in December of 1981?
*190 “A. No, I haven’t.
“Q. Do you feel you’re capable of doing heavy physical work in your present condition?
“A. No. because I tried it and it hasn’t worked out.
“Q. How has it affected you?
“A. It’s affected me on my walking on hard pavement, hard concrete, and lifting, bending, too.
“Q. How does it affect your bending and lifting?
“A. When I bend over, the lifting, I just can’t do it, it aggravates it worse, and I don’t get any better.
“Q. Do you have any specialized training or job experience that qualifies you for jobs that don’t require heavy physical labor?
“A. No, I have none.”
An examination of the record reveals that the only credible substantial evidence as it concerns causation and injury supports the claimant. We hold there is no substantial evidence to support the lower court’s finding that claimant failed to prove his disability was the result of the two injuries.
Finally, claimant urges that an injury once established must be presumed to continue until proven otherwise. The claimant again cites to Hume in support of his contention. “It is a rebuttable presumption ‘that a thing once proved to exist continues as long as is usual with things of that nature.’ Section 26-1-602(32), MCA.” 608 P.2d at 1069. Anaconda responds that Hume does not apply because no testimony established any substantial link between the 1978 incident and the claimant’s present complaints of pain. The record speaks for itself. The foregoing medical testimony of Dr. Schimpff clearly established that the claimant met his burden to prove that his present symptoms are related to the original injury.
Moreover, the Montana Legislature has mandated that the Workers’ Compensation Act be liberally construed in favor of the claimant. Section 39-71-104, MCA. This Court requires the same. Klein v. Indep. Wholesale Assoc. Grocers (1975), 167 Mont. 341, 538 P.2d 1358; Stokes v. Delaney & Sons, Inc. (1964), 143 Mont. 516, 391 P.2d 698. We deal with many individuals from all walks of life; not all are sophisticated, nor all highly educated. The claimant is a working man. He is a person whose livelihood is at the mercy of his own health. The policy underlying the Workers’ Compensation Act cannot be defeated by narrow and technical construction.
Accordingly, we hold a termination of benefits by Anaconda was improper upon finding the claimant was disabled, and absent *191 any intervening cause or alternative explanation for claimant's present, undisputed painful and disabling condition.
The judgment is reversed and remanded to the Workers’ Compensation Court with instructions to enter judgment for claimant in accordance with this opinion.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES SHEEHY and HUNT concur.