JUSTICE TRIEWEILER
dissenting.
I respectfully dissent from the opinion of the majority.
In this case, the defendant conceded in the pretrial order that the claimant had been injured during the course of his employment on May 9,1987. The dispute related to the extent of injury and whether or not the claimant sustained any permanent disability as a result of that injury. The issue, as framed in the final pretrial order signed by both parties, was as follows:
“1. What is the nature and extent of the claimant’s permanent disability arising from his injuries of May 9, 1987, and what are the benefits to which the claimant is entitled?”
According to the workers’ compensation statute in effect at the time of the claimant’s injury, disability must be proven by a preponderance of medical evidence. Section 39-71-116(12), (13), and (19), MCA(1985). Therefore, the trial court’s decision had to be based upon the preponderance of the medical evidence.
In this case, all of the medical evidence was by deposition or written document. There was no medical evidence provided by any live witness.
The traditional reason for deferring to trial judges and juries in the resolution of factual disputes is that they are in a better position to observe the demeanor of witnesses and observe physical evidence where it is relevant. However, we have frequently recognized that that traditional notion of deference makes no logical sense in a case where the Workers’ Compensation Court’s decision is based upon the same medical documents or depositions that are before us in this Court. We have repeatedly held that in that situation we are in as *72 good a position to evaluate the medical testimony as the trial judge. Brown v. State Compensation Ins. Fund, 231 Mont. 158, 752 P.2d 171 (1988); Shupert v. Anaconda Aluminum Co., 215 Mont. 182, 188, 696 P.2d 436, 439 (1985); Hert v. J.J. Newberry Co., 178 Mont. 355, 360, 584 P.2d 656, 659 (1978).
In this case, any objective analysis of the medical evidence can lead to only one conclusion — that the claimant’s thoracic outlet syndrome was caused by the crush injury that he sustained on May 9, 1987.
Of the two medical witnesses whose testimony was offered by deposition, one testified that he was not in a position to express an opinion, and the other expressed an unqualified opinion in favor of the claimant. The only other opinion expressed was in the medical report of Richard A. Nelson, M.D. It was also his opinion that the claimant’s TOS was caused on May 9,1987.
Even if this Court had no independent obligation to review that medical evidence (which is not the case), and chose simply to defer to the trial judge, there was no medical evidence of any type to support the trial judge’s finding that the claimant was not injured on May 9, 1987.
In support of its decision, the majority opinion states that Dr. Ivy could not relate the TOS to the 1987 injury, and implies that he had a reason for believing otherwise. However, what Dr. Ivy actually said was that he had no opinion because he had never examined nor treated the claimant for that condition. His actual testimony was as follows:
“So what I am telling you, I can’t render an opinion regarding his thoracic outlet syndrome because I haven’t examined him for it. And the only pain he had down his arm that I know about is the pain that he had on 5/23, which was a pinched nerve as far as I’m concerned. It had nothing to do with thoracic outlet syndrome.”
Dr. Ivy’s inability to express any opinion regarding causation hardly rises to the level of substantial medical evidence in support of the trial court’s finding.
Dr. Ivy admitted that he was not qualified to express an opinion regarding the cause of the claimant’s thoracic outlet syndrome because he had not treated him for that condition. Dr. Ivy’s testimony was properly objected to and should not have formed the basis for the Workers’ Compensation Court’s decision.
On the other hand, Steven M. Martini, M.D., who diagnosed and has treated the claimant for his thoracic outlet syndrome, expressed a very unequivocal opinion regarding its causation. He explained that *73 TOS results when the nerves and major vessels, which pass between the first rib and the clavicle (in the area of the sternum or chest), sustain a compression or irritation from injury. He also testified:
“The first injury, which was well documented as a crush injury to the chest, to a high degree of medical certainty, would have caused his thoracic outlet syndrome.
“It’s consistent historically with what we know about thoracic outlet syndrome, i.e. local trauma to the area of the brachial plexus. And the medical record and the patient’s account would reflect that was the case.”
The majority attempts to minimize the impact of Dr. Martini’s uncontroverted medical opinion by pointing out that in one of his medical entries he referred to a fracture of the right clavicle, rather than correctly referring to the left clavicle. However, that discrepancy is totally irrelevant. The clavicles are separated by no more than a couple of inches. The claimant’s earliest report of injury to his employer following the May 9, 1987, incident, clearly indicates that the trauma was to his chest area, and that he sustained contusions over that entire area.
Dr. Richard A. Nelson’s opinion was also admitted into evidence, not, as the majority has suggested, because of the Workers’ Compensation Court’s liberal consideration of the medical evidence, but because there was no objection to it by the defendant. Dr. Nelson also clearly stated an uncontested opinion that the claimant’s thoracic outlet syndrome resulted from the crush injury on May 9, 1987.
“[I]t seems from reviewing my records and the information you provided here regarding your question of which of his injuries is more likely to have caused the problem with thoracic outlet syndrome, that would certainly have been the 5/9/87, injury because it was of such a high magnitude in fracturing the clavicle at the same time. Since the thoracic outlet syndrome is placed in that same exact anterior cervical spine that the fracture took place, it is more likely than not that this was, indeed, the origin of his thoracic outlet syndrome.”
The majority dismisses Dr. Nelson’s opinion, based on its misunderstanding of anatomy. The majority concludes that because the TOS was on the right and the fractured clavicle on the left, Dr. Nelson was mistaken in his conclusion that both injuries occurred in the same place. However, Dr. Nelson’s reference to anterior cervical spine does not refer to right or left, it merely refers to the front part of the body, rather than the posterior or back side.
The majority opinion also fails to point out that in Dr. Nelson’s *74 November 9, 1988, evaluation, which was attached to Dr. Martini’s deposition without objection, Dr. Nelson clearly pointed out, when referring to the claimant’s history that:
“[H]e was jacking up a trailer for a tire flat and the jack slipped and the tire came down and hit him in the left shoulder, anterior cervical chest region causing a fracture of the left collarbone and subsequent to this he developed headaches about two days later and had a cast put in place and he continued to live with this pain with a stiff neck. ...”
(Emphasis added.)
It is clear that Dr. Nelson was aware that the claimant’s fractured clavicle was on the left side.
The majority incorrectly concludes that the Workers’ Compensation Court was free to disregard all of the uncontroverted medical testimony because of other “substantial” evidence which the court had before it. On the one hand, the majority agrees that where medical evidence is by deposition or document, this Court is in as good a position as the trial court to evaluate that testimony. However, in the next breath the majority emasculates that standard of review by finding that:
“The medical depositions must be overlaid onto an encompassing review of the Workers’ Compensation Court’s decision under the substantial credible evidence standard.”
I suppose the only way to reconcile these two apparently conflicting standards of review is to say that where this Court wants to reverse the Workers’ Compensation Court it will review the medical deposition testimony independently, and where it wants to affirm the Workers’ Compensation Court, without being accountable for the decision, it will overlay the medical depositions with the rest of the testimony. However, in this case, the rest of the testimony provides no support for the trial court’s decision.
The only people who testified at trial were the claimant and his wife. Neither of them were impeached nor contradicted in any significant aspect of their testimony, and nothing in their testimony provided any basis for the trial court’s conclusion that the claimant was not disabled from his May 9, 1987, injury. Furthermore, the Workers’ Compensation Court’s conclusion was not based upon any reservation that it had about the claimant’s or his wife’s credibility. It was based upon that court’s misunderstanding of the physical evidence.
The trial court concluded that because the claimant fractured his *75 left clavicle, and his thoracic outlet symptoms were on the right side, they could not have both resulted from the same accident. However, the evidence is to the contrary. Dr. Ivy testified that when he saw the claimant one-half hour after the May 9, 1987, accident, he was told that a trailer fell on the claimant’s chest. The claimant described the trailer as a steel lowboy with three axles which weighed approximately 2000 pounds. Dr. Ivy also testified, and his records indicate, that in addition to the fractured left clavicle, the claimant sustained contusions to his chest.
Dr. Martini explained that thoracic outlet syndrome results when the nerves and major vessels, as they pass between the first rib and the clavicle, sustain a compression or irritation from injury. Those nerves and vessels, which would account for symptoms on the claimant’s right side, are within inches of the fracture that occurred to his left clavicle. It is extremely doubtful that the 2000 pound trailer which crushed the claimant’s chest was capable of such discrete damage that it could have injured his left clavicle without causing any damage several inches further to the right on his chest.
In short, whether we apply the appropriate standard of review, which is whether the claimant had proven his claim by a preponderance of the evidence, or if we simply review the record to determine whether there was substantial evidence to support the Workers’ Compensation Court’s finding that the claimant was not disabled, this case should be reversed.
I also dissent from the majority’s second opinion which concludes that the claimant was not entitled to temporary total disability benefits for the three month period following his 1987 injury.
It was uncontradicted that the claimant was placed in a cast for his clavicle fracture two days after his injury, and that he was unable to do the heavy physical labor involved in maintaining ditches for the irrigation district by which he was employed.
It was the secretary for the claimant’s employer who requested that the claimant’s wife perform his job so that they could continue to pay him, instead of providing disability benefits. The claimant had no prior experience with workers’ compensation claims.
Following his injury, he did not return to work, at all,, for three weeks. After that time, he simply rode in a truck to give instructions to his wife. All of the work which he had previously performed as part of his job was performed by his wife. Any payment made by his employer was payment for his wife’s services. To hold that the employer can avoid paying disability benefits, during a period that *76 the claimant was obviously unable to work because of a work related injury, by putting his name on the check that belonged to his wife, is to exalt form over substance and encourage future mischief by employers and insurers.
If the claimant had not been married, or if his wife had been otherwise employed and unavailable to perform his duties, his employer would have had to hire a third person and pay that person directly. Certainly, under those circumstances, the defendant would not claim, and this Court would not find, that the insurer could avoid its obligation to pay total disability benefits during the three months that the claimant was unable to return to work. Allowing the defendant to avoid those same obligations under the circumstances in this case, gives this Court’s blessing to a subterfuge and sham.
The claimant’s wife was a separate person and entitled to be treated that way, rather than as an appendage of her husband, for purposes of compensation for her work.
For these reasons, I would reverse the decision of the Workers’ Compensation Court and remand for a determination of the claimant’s disability rate, the extent of his permanent partial disability, and whether he is entitled to have any or all of his disability benefits converted to a lump sum.
JUSTICES HARRISON and HUNT concur.