No. 94-296

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STEPHEN P. WEBER,

      Petitioner and Respondent,

  -vs-

PUBLIC EMPLOYEES' RETIREMENT BOARD,

      Respondent and Appellant.

FILED

MAR 09 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Thomas C. Honzel, Judge presiding

COUNSEL OF RECORD:

       For Appellant:

           Kelly A. Jenkins, Special Assistant Attorney
           General, Helena, Montana

       For Respondent:

           Eric B. Thueson, John A. Kutzman, Attorneys
           at Law, Helena, Montana

                       Submitted on Briefs:  January 12, 1995

                             Decided:  March 9, 1995

Filed:

_____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

The Board of Administration of the Public Employees Retirement Division (PERB) appeals from the decision of the District Court of the First Judicial District, Lewis and Clark County, which reversed the decision of PERB denying Stephen Weber (Weber) disability retirement benefits under Title 19, Chapter 3, Part 10, MCA.

Issues

1. Did the District Court improperly assume jurisdiction over Weber's petition for judicial review which was filed more than thirty days after Weber was personally notified of the Administrative decision but within thirty days of the written memorandum of decision?

2. Did the District Court commit reversible error in concluding that PERB misapprehended the effect of the medical deposition testimony of Dr. Etter?

Backsround

From 1981 through September 9 of 1988 when he resigned his position, Weber was the assistant administrator of the Tort Claims Division (now known as the Insurance and Legal Division) for the Montana Department of Administration. Weber suffers from Multiple Sclerosis (MS), a disorder which affects the brain and nervous system and is characterized by the appearance of "plaques" (scar tissue) on the nerves which can disrupt the transmission of nerve impulses. The symptomology of the disease includes numbness; lost or reduced mobility; loss of strength and coordination;

2

deterioration of vision; and deterioration of speech. Another aspect of this disease is that it is often characterized by alternating periods of increased and decreased symptoms ("exacerbations" and "remission"), such that an MS victim may appear normal during a period of remission, which may last for days, weeks, or even months. Additionally, MS is known to be aggravated by physical and emotional stress.

Weber has had MS at least since the early 1970s. Although he was tentatively diagnosed with MS in 1976, he was not conclusively diagnosed until June of 1991, when he underwent an MRI (Magnetic Resonance Image) of his head. He had experienced symptoms consistent with MS over the twenty-year period beginning around 1970, but given the non-debilitating nature of his symptoms for most of that time, along with the invasive nature of past techniques for confirming MS (spinal tap), his physicians had elected not to aggressively pursue a diagnosis. Consequently, Weber did not know he had MS when he left his job with the State in September of 1988, at which time he was suffering from what are now known to have been stress related complications of the disease, including double vision, loss of concentration and energy, ringing in his ears, and slurred speech. At the time of leaving his job in 1988, Weber attributed those symptoms to work-related stress.

In August of 1988, Weber learned that his position was being reclassified from pay grade level 16 to level 14. He believed that this pay reduction, as well as other problems he was having with his superiors at the time, was in retaliation for his refusal to authorize payment of what he felt was an inflated claim submitted

3

to his department by another State agency, an opinion with which the Montana State Auditor concurred.

In August of 1989, Weber sued the State of Montana, alleging that his superiors' treatment of him prior to his resignation created an intolerable work environment and amounted to a constructive discharge. On September 27, 1990, a jury agreed and awarded Weber more than $30,000 in damages. This verdict was upheld by the Montana Supreme Court on May 5, 1992, in Weber V. State of Montana (1992), 253 Mont. 148, 831 P.2d 1359.

After learning that the physical problems he was experiencing at the time he left his job were in fact stress induced exacerbations of MS, Weber filed for disability retirement benefits from the Public Employees' Retirement System (PERS) on August 6, 1991. In order to qualify for PERS disability benefits, the claimant must prove that he has become unable to perform the duties of his job by reason of physical or mental incapacity while in active service. Section 19-3-1002, MCA. Furthermore, the disability must be permanent, or of extended or uncertain duration as determined by PERB on the basis of competent medical opinion. Section 19-2-303(15), MCA.

In his application for disability benefits, Weber alleged that he became unable to effectively perform his job at the Tort Claims Division by August of 1988. At the hearing, Weber and his wife testified regarding his physical condition in 1988. Weber also presented the deposition testimony of his physician, Helena internist Dr. Harry Etter, who testified that in his opinion, and to a reasonable degree of medical certainty, Weber was disabled

4

from performing his job by the time he resigned his position in 1988.

On December 19, 1991, PERB denied Weber's application for benefits. Weber requested administrative review of this denial pursuant to the Montana Administrative Procedure Act, §§ 2-4-101 through 2-4-711, MCA. A contested case hearing was held on August 28, 1992, and on February 4, 1993, the hearing examiner recommended that Weber's application for benefits be denied. On April 29, 1993, the parties presented oral argument to PERB concerning their objections to the hearing examiner's proposed findings and conclusions. On May 17, 1993, PERB adopted all of the hearing examiner's proposed findings of fact, all but one of the conclusions of law, and adopted the examiner's recommendation that Weber's application for benefits be denied.

In support of its denial of benefits, PERB relied on previous statements made by Weber which tended to show that he resigned his position with the State in order to preserve the higher pay-out of his unused benefits, and not because he believed himself to be disabled; that he believed himself capable of continuing in his job; that he offered to remain in his job if his pay would not be cut; that he failed to seek medical attention for what he claimed was a particularly difficult exacerbation; and that in the course of his wrongful discharge trial, he characterized his health subsequent to his military service as excellent.

Although PERB did not employ a medical expert, it nonetheless concluded that Weber was not disabled at the time of his resignation. PERB relied on Dr. Etter's response to a hypothetical

question posed by PERB's counsel &cross-examination to support its denial of Weber's application for disability benefits.

Issue 1

Did the District Court improperly assume jurisdiction over Weber's petition for judicial review which was filed more than thirty days after Weber was personally notified of the Administrative decision but within thirty days of the written memorandum of decision?

PERB contends that its final decision was stated in the record at the April 29, 1993 hearing, at which time Weber and his attorneys were present and were personally notified of its decision. On May 5, Weber requested a written memorandum of decision, as allowed by § 2-4-623(5), MCA. Accordingly, on May 17, 1993, a written memorandum of decision was mailed to Weber and his attorneys. Weber's petition for judicial review was filed June 8, 1993. PERB contends that the thirty-day period for filing a notice of appeal began to run from April 29, 1993, the date PERB orally announced its decision as opposed the May 17, 1993, the date it forwarded a written memorandum of decision to Weber. The minutes of the April 29, 1993, hearing indicate that the PERB attorney, "explained that the next step, after the Board reaches its final determination, when it rules on the exceptions before it and renders a final decision in writing, is that under the law either party has a right to petition [the] District Court for judicial review."

Under the Montana Administrative Procedure Act, a party seeking judicial review of an agency decision must petition for

such review "within 30 days after service of the final decision of the agency . . . ." Section 2-4-702(2)(a), MCA. We find, in the case at hand, the decision of the agency did not become "final" and was not served until May 17, 1993, when PERB issued a written document entitled "Findings of Fact, Conclusions of Law and Final Decision." Weber's petition for judicial review was filed within thirty days of May 17, 1993 and therefore was **timely.**

Issue 2

Did the District Court **commit** reversible error in concluding that PERB misapprehended the effect of the medical deposition testimony of Dr. Etter?

In its written memorandum, the District Court acknowledged that, normally, its review of an administrative decision is restricted to a determination as to whether or not the administrative findings of fact are clearly erroneous, and whether the agency's interpretation of the law is correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. The District Court then relied on this Court's decision in Shupert v. Anaconda Aluminum Co. (1985), 215 Mont. 182, 187-88, 696 P.2d 436, 439, for the proposition that the reviewing court is in as good a position as the lower tribunal to evaluate deposition testimony. Roadarmel v. Acme Concrete Co. (1989), 237 Mont. 163, 168, 772 P.2d 1259, 1262.

In Shupert, this Court reviewed a decision by the Workers' Compensation Court and stated as follows:

Ordinarily, this Court will not substitute its judgment

7

for that of the Workers' Compensation Court in determining the weight and credibility to be given testimony. The reason for this is that this Court defers to the lower court's assessment of the demeanor and credibility of witnesses. Rule 52(a), M.R.Civ.P. However, when the critical evidence, particularly medical evidence, is entered by deposition, we have held that "this Court, although sitting in review, is in as good a position as the Workers' Compensation Court to judge the weight to be given such record testimony, as distinguished from oral testimony, where the trial court actually observed the character and demeanor of the witness on the stand. Hert v. J.J. Newberry Co. (1978), 178 Mont. 355, 359-60, 584 P.2d 656, 659.

Shuuert, 696 P.2d at 439.

The District Court was correct in concluding that there is no operative distinction between our reasoning in Shupert and the facts in the present case where the testimony of Dr. Etter was by way of deposition. That being the case, the District Court was in as good a position as the hearing examiner to judge the weight of Dr. Etter's deposition medical testimony.

In applying the Shupert rationale that a reviewing court is in as good a position as the trier of fact to review deposition testimony, it must be noted that the standard of review on the overall case remains the same. In McIntyre v. Glen Lake Irrigation District (1991), 249 Mont. 63, 813 P.2d 451, we reviewed a decision of the Workers' Compensation Court which was based upon deposition medical testimony as well as live testimony from the claimant and his spouse. In McIntyre we held that, although we could make an independent review of the deposition testimony, in the final analysis, we were still restricted to determining whether there was substantial credible evidence to support the decision of the Workers' Compensation Court. McIntyre, 813 P.2d at 454.

8

The present case differs procedurally from <u>McIntvre</u> where the Workers' Compensation Court had heard live testimony from the claimant and had reviewed deposition medical testimony. Here, the District Court did not hear any live testimony. Rather, it was reviewing the proceedings of PERB which adopted a proposed decision from a hearing examiner who heard testimony and reviewed both medical and non-medical depositions. In other words, in the present case, the **live testimony is two** steps further removed from this Court than in <u>McIntvre</u>. Thus, unlike <u>McIntvre,</u> we are not reviewing the district court to determine whether there is substantial credible evidence to support its decision. Rather, we are reviewing the District Court to determine whether it, in turn, properly applied the correct standard of review to the administrative decision of PERB. That is, did the District Court determine whether the administrative findings of fact were clearly erroneous and whether the agency's interpretation of the law was correct. We conclude that the District Court, although engaging in an independent review of the medical deposition, specifically applied the three-part clearly erroneous standard. State Comp. Mutual Insurance Fund v. Lee Rost Logging (1992), 252 Mont. 97, 102, 827 P.2d 85, 88. Further, we determine that the District Court correctly applied that standard.

In support of Weber's claim for disability benefits, Dr. Etter testified (by way of deposition) that Weber had been suffering from MS for at least the last twenty years, but that the disease had not become disabling until 1988 when Weber underwent a period of job stress. He indicated that the MS symptoms had been progressively

9

worsening since the stressful work events in 1988. Accordingly, Dr. Etter concluded that, since 1988, the MS had continuously disabled Weber from the kinds of accounting and administrative functions he performed for the State.

Weber, however, did not realize that he was suffering from MS until he was definitively diagnosed with MS in 1991 when he underwent an MRI. It was then that he realized that MS, coupled with the stress of his job with the State, caused the deterioration of his job performance in 1988. He therefore filed for PERS disability retirement benefits on August 6, 1991.

PERB did not present any medical testimony of its own. PERB does not deny that Weber has MS now or that he has had the disease for a number of years including the time period surrounding the stressful events in the late summer and early fall of 1988. Further, the agency does not dispute that MS is a progressive and debilitating disease with symptoms that come and go. The agency agrees that Weber is presently disabled from the last job he held with the State of Montana.

Since PERB did not present any medical testimony of its own, Dr. Etter's testimony and medical conclusions were uncontradicted. The medical opinions of a claimant's treating' physician are entitled to special weight and should not be disregarded absent specific legitimate reasons for doing so. Embrey v. Bowen (9th Cir. 1988), 849 F.2d 418, 421.

In contending that Weber was not disabled at the time of his resignation, PERB relied on previous statements made by Weber in 1988 at which time Weber indicated that he was resigning his

position in order to preserve the higher pay-out of his unused benefits--not because he believed himself to be disabled. As the District Court acknowledged, these statements, made by Weber in 1988, do nothing more than show that Weber did not believe himself to be disabled at that point in time. The statements do not conclusively prove that he was not, in fact, disabled at that time.

PERB places considerable weight on Dr. Etter's response to a hypothetical question posed by PERB's counsel. Counsel for PERB asked Dr. Etter to assume the following: that he had been shown statements by Weber indicating that Weber felt he was capable of performing the job functions that he had at the State; that Weber felt so at the time he terminated his employment at the State; that he felt so for some extended period of time after that; and that in fact Weber anticipated that he could do that job and do the job of a CPA in private practice. Counsel for PERB then posed the following question, "on the basis of that information, would you believe that he was completely disabled from performing his job functions with the State?" Dr. Etter responded, "if he told me that, then I would not think he was disabled, no, for performing those tasks."

The question posed by counsel for PERB did not acknowledge that multiple sclerosis is an incurable, progressive disease subject to periods of remission and exacerbation. Furthermore, the hypothetical question did not consider the possibility that the statements attributed to Weber in 1988 might have been made during a period of remission and thus Weber may have believed himself to be in perfectly good health when, in fact, he was not. See Estes

11

v. Railroad Retirement Board (9th Cir. 1985), 776 F.2d 1436, 1438, in which the Court noted that "multiple sclerosis can be disabling notwithstanding normal activity in periods of remission."

PERB also claims that Weber was ineligible to claim disability benefits because he was not continuously disabled from the time he left his job in 1988 until the time he applied for benefits in 1991. In concluding that Weber was not eligible for benefits, PERB chose to treat the testimony of Weber and his wife as insufficient. In its Finding of Fact No. 17, PERB stated:

> Despite an exhaustive search of the record for corroborating evidence, except for Stephen Weber's and Beverly Weber's testimony at hearing, no evidence was submitted that Mr. Weber's MS symptoms did not completely abate following the August 1988 attack.    [Emphasis added.]

In its Finding of Fact No. 20, PERB stated:

> Mr. Weber contends that the August 1988 "attack" was the beginning of a change in character of the effect of MS on his life and his abilities in that for the first time not all of the symptoms of MS completely abated after this attack.   The particular symptom alleged not to resolve was double vision.   This contention is rejected as not supported by a preponderance of credible evidence. The only evidence to support this contention is the hearing testimony of Stephen and Beverly Weber [emphasis added].

Although choosing to discount the testimony of the Webers, PERB did not attempt to refute the testimony of Stephen and Beverly Weber by offering medical testimony of its own to show that from 1988 to 1991 Weber was capable of performing the duties of his executive position with the State even though he was relatively symptom free during that period.  All that PERB offered in support of these findings were statements made by Weber in 1988 before he knew his problems were related to MS.  It should be noted that PERB

12

concedes that by May of 1991 Weber was disabled and, had he still been working for the State at that time, it is quite probable that disability benefits would have been appropriate. We hold that the District Court did not err when it ruled that PERB's findings were clearly erroneous in that PERB misapprehended the effect of Dr. Etter's testimony. Further, the District Court did not err in its definite and firm conviction that PERB, in denying Weber disability benefits, committed a mistake. Lee Rost Loosing, 827 P.2d at 88. We affirm the District Court's conclusion that, based on the available medical evidence, Weber has been continuously disabled from performing the duties of the Assistant Administrator of the Tort Claims Division since his departure from that position on September 9, 1988.

By way of clarification, it should be noted that the present case differs from Moran v. Shotgun Willies, Inc. (Mont. 1995), (No. 94-361, decided February 15, 1995), another administrative appeal decision handed down earlier this month. In Moran, we affirmed the district court determination that there was competent substantial evidence to support the hearing officer's findings and conclusions and therefore the agency (Human Rights Commission) abused its discretion and exceeded its authority under § 2-4-621(3), MCA, when it rejected the hearing officer's findings. Moran, slip op. at 8. Unlike the Human Rights Commission in Moran, PERB, in the present case, did not disagree with its own hearing officer. Rather, PERB adopted the hearing officer's findings of fact so the competent substantial evidence test of § 2-4-621(3), MCA, was not an issue. Also, Weber raised, and the District Court applied, the "clearly

13

erroneous" standard rather than the "'abuse of discretion" standard utilized in <u>Moran</u>--both of which are permissible standards under § 2-4-704(2)(a), MCA. In applying the three pronged "clearly erroneous" standard, <u>Lee Rost Logging,</u> 827 P.2d at 88, the District Court did not find that there was a lack of substantial credible evidence to support PERB's decision. Rather it relied upon the second and third prongs of the test and found that PERB misapprehended the effect of the testimony and, further, that it had a firm conviction that PERB had committed a mistake.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
Justices

14

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the Court's opinion on issue 1 and, with great reluctance, respectfully dissent from that opinion on issue 2. My reluctance is personal, based on my own familiarity with MS and the heartbreak of watching a close relative progress through the early stages of that incurable and progressive disease to a state of total physical incapacitation. My dissent, however, is based on my perception that the Court's legal analysis of issue 2 is erroneous.

It is important to keep in mind at the outset that the burden of establishing entitlement to disability benefits is on the claimant. Under § 19-3-1002, MCA (1991), an employee who has become disabled while in active service is eligible for disability retirement benefits. "Disabled" means "unable to perform his duties by reason of physical or mental incapacity." Section 19-3-1001, MCA (1991).

I raise the matter of who carries the burden because the Court suggests, at least by implication, that the PERB itself had some affirmative burden to meet. The Court does so by making the following statements:

1. "Although PERB did not employ a medical expert . . ."

2. "PERB did not present any medical testimony of its own."

3. "Since PERB did not present any medical testimony of its own . . ."

4. "PERB did not attempt to refute the testimony of Stephen and Beverly Weber by offering medical testimony of its own . . ."

15

These repeated statements suggest that the PERB had a burden to come forward with evidence, rather than merely to determine whether Mr. Weber had carried his burden of proving by a preponderance of the evidence that he was disabled--that is, unable to perform the duties of his position--by MS in September 1988 when he resigned. The Court's apparent shifting of the burden is erroneous; it also reflects a lack of focus and clarity in other areas of the Court's opinion on this issue.

In fact, the record in this case clearly supports the PERB's finding that Mr. Weber did not meet his burden of proving that he was disabled by MS from performing his job at the time of his resignation in September 1988. Indeed, the only unequivocal testimony supporting Mr. Weber's claim came from Mr. Weber and his spouse; the PERB did not find Mr. Weber or his spouse credible based on Mr. Weber's statements at the time of his resignation, during his wrongful discharge suit and to a variety of health care providers between 1986 and 1991 that evidenced no serious MS-type symptoms. This is the province of the trier of fact, not the District Court or this Court. I cannot agree to the reviewing courts substituting their judgment for that of the factfinder.

Nor do I agree with the Court that the PERB misapprehended the effect of Dr. Etter's deposition testimony. It is critical to note that Dr. Etter provided the only medical opinions in this case and he offered two such opinions. His first opinion, supporting Mr. Weber's claimed disability as of August 1988, was based entirely on Mr. Weber's statements to him at a significantly later date; it was

16

not based on any medical testing done in 1988 or, indeed, on any medical records for the period from August 1988 through August 1991.

Dr. Etter's second medical opinion did not support Mr. Weber's claim of disability in August 1988. That opinion was based on statements which had been made by Mr. Weber to others at various pertinent times, specifically regarding his health and the reasons he left his position with the State; those statements were inconsistent with Mr. Weber's statements to Dr. Etter.

In short, faced with statements made to others by Mr. Weber which were inconsistent with those made to Dr. Etter, the doctor changed his medical opinion to one which did not support Mr. Weber's claim. How the Court can conclude that the PERB misapprehended the effect of Dr. Etter's testimony in this regard is inexplicable to me under these circumstances. Equally inexplicable is the Court's use of such a technique to reject the entirety of the PERB's decision.

Indeed, the weight of the medical evidence in this case supports the PERB's determination. During more than thirty visits to the VA Medical Center at Fort Harrison from October 1988 to May 1991, not a single complaint was recorded from Mr. Weber of an MS-related symptom. In fact, doctors who saw Mr. Weber from August 1988 through May 1991 recorded a lapse of double vision complaints during that time. Importantly, Dr. Etter--relied on by the District Court and this Court as Mr. Weber's treating physician-- saw Mr. Weber once in August 1988 and did not mention any

17

complaints of MS or stress-related symptoms made by Mr. Weber at that time.  He did not see Mr. Weber again until October 1991. As discussed above, his medical opinion that Mr. Weber was disabled in August 1988 was not based on medical testing or medical records for the period August 1988 through August 1991; rather, it was based entirely on Mr. Weber's statements to him regarding his condition at that time.

In further regard to Dr. Etter's testimony, the Court states that the medical opinions of a claimant's treating physician are entitled to special weight and should not be disregarded absent specific legitimate reasons for doing so.  While I agree with these general principles, it is my view that there are at least two specific legitimate reasons for not giving Dr. Etter's medical opinion supporting Mr. Weber's claim special weight in this case. First, Dr. Etter was not Mr. Weber's only treating physician during the period at issue; indeed, Dr. Etter did not even see Mr. Weber between the time of the resignation and 1991.  Second, Dr. Etter's medical opinion was based entirely on the "history" Mr. Weber provided him, and that opinion changed dramatically when presented with other statements made by Mr. Weber which were inconsistent with those Mr. Weber made to Dr. Etter.

Finally, I note in this regard that giving special weight to a treating physician does not compel a factfinder to determine that a claimant is credible; nor does it require giving such special weight to only one portion of that physician's testimony that all other evidence of record--including a contrary opinion from that

18

physician--is counterbalanced. Yet that is the effect of the Court's determination that the PERB "misapprehended the effect" of Dr. Etter's deposition testimony.

The Court also suggests that Mr. Weber's earlier statements about his health show only that he did not believe himself disabled at the time of his resignation in September 1988. I could not disagree more. On the record before us, Mr. Weber is the only person in a position to state directly the extent to which he was actually disabled--that is, totally unable to perform his job--in September 1988. His various statements regarding his health during that time, made in part in the context of a lawsuit in which he successfully established that he was wrongfully discharged, are evidence of the state of his health at that time and of his ability to perform his job at that time.

In this regard, the Court also makes an anomalous comment on Mr. Weber's inconsistent health-related statements which relates back to my earlier-expressed concern regarding burden shifting. The Court states that Mr. Weber's inconsistent statements "do not conclusively prove that he was not, in fact, disabled at that time." While the Court's statement is correct, it is also irrelevant. Mr. Weber carried the burden of establishing his eligibility for disability benefits; the PERB had no burden to establish his ineligibility.

Finally, the Court attempts to undercut the hypothetical question posed to Dr. Etter, and Dr. Etter's response, by stating that the question did not acknowledge that MS is an incurable,

19

progressive disease subject 'to periods of remission and exacerbation. Here, the Court is apparently trying to rescue a bad situation by suggesting that it has more specialized knowledge of the disease and its ramifications than does Dr. Etter, the supposed expert in this case. Moreover, the Court's undoubtedly true statement about the nature of MS has no relevance to whether Mr. Weber was, in fact, disabled by that progressive disease <u>at the time</u> he resigned from his job in September 1988. That is the issue before us.

I conclude that substantial credible evidence supports the PERB's numerous and detailed findings. I conclude also that the PERB did not misapprehend the effect of Dr. Etter's testimony or, indeed, any other testimony; nor am I left with any conviction that a mistake was made by the PERB. I would reverse the District Court and reinstate the PERB's decision.

_____
                                Justice