# FILED

March 18 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0550

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2014 MT 70

AMERICA'S BEST CONTRACTORS, INC.,

      Petitioner and Appellant,

  v.

JASVINDER SINGH and STATE OF MONTANA
DEPARTMENT OF LABOR AND INDUSTRY,

      Respondents and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 12-1054
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeffrey A. Simkovic, Billings Legal, PLLC, Billings, Montana

      For Appellees:

          Jasvinder Singh, self-represented, Chatsworth, California

          Patricia Bik, Special Assistant Attorney General, State of Montana
Department of Labor and Industry, Helena, Montana

Submitted on Briefs:  February 19, 2014
Decided:  March 18, 2014

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    The Hearings Bureau of the Montana Department of Labor and Industry (DOLI) determined that America's Best Contractors, Inc. (ABC) owed Jasvinder Singh unpaid commissions and a penalty totaling $60,574.66.  ABC petitioned for judicial review in the First Judicial District Court, Lewis and Clark County.  The District Court affirmed DOLI's final agency decision.  ABC now appeals to this Court.  We affirm.

¶2    ABC articulates two issues for review, which we restate as follows:

1.  Did the Hearing Officer lack authority to disregard certain payments by ABC to Singh on the ground that such payments were for collateral obligations?

2.  Are the Hearings Officer's factual determinations that certain checks issued to Singh were payments on collateral obligations supported by the evidence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    ABC is a "storm-chaser" roofing company, doing business in Montana as a registered foreign corporation.  ABC maintained an office in Billings during the time period relevant to this case.  Besides Montana, ABC also operates in Nebraska, North Dakota, and Texas, soliciting business to repair or replace roofs, siding, and gutters.

¶4    Dwane "Abe" Drury, ABC's president, hired Singh as a salesperson and estimator in 2003.  Singh remained employed with ABC until 2011.  During any given year, Singh would sell roofing, siding, and gutter repairs from approximately March to November.  Between November and March, Singh would return to his home state but continue to service the contracts he had sold by staying in contact with his customers.

¶5    Singh was paid on commission.  ABC customarily stretched out its payments of commissions to its salespersons over the off-season such that the payments were made in

2

weekly increments. Hence, commissions from a given year would not be fully paid until the following spring. Moreover, the payments were dependent on when ABC received payment from its customers; thus, if customers did not pay their bills until the following year, the commissions correspondingly would not be paid until the following year.

¶6 Singh was an exceptional salesperson. Drury admitted that Singh was ABC's best salesperson and that Singh had obtained a substantial number of contracts for ABC. Prior to 2009, Singh's commission was ten percent of the price on all contracts that he sold and for which he collected full payment. In 2009, Drury and Singh agreed that Singh would be paid a twelve percent commission on his sales plus a one percent commission on the sales of ABC's other salespersons. Drury decided, however, that the sales reports compiling Singh's sales would not reflect the additional two percent that he was to be paid over the usual ten percent commission, and also would not reflect the one percent that Singh was to be paid from the other salespersons' sales.

¶7 At no time did Singh and ABC have a written employment agreement. The employment relationship appears to have been complicated by a personal friendship between Singh and Drury. Among other things, Singh loaned Drury money in early 2010 so that Drury could pay for hunting trips that Drury wanted to take. Singh's loans to Drury totaled $25,000.00.

¶8 Prior to 2010, Singh sold roofing contracts for ABC in Midland, Texas, and Bowman, North Dakota. In 2010, severe storms in eastern Montana created a market for ABC, and Singh relocated to Billings to begin selling roofing, siding, and gutter contracts in Montana. In conjunction with this move, Singh reminded Drury of the money he was

owed for prior work—in particular, commissions for contracts sold in Texas and North Dakota—as well as the $25,000.00 loan for hunting expenses. Singh began to document money that ABC paid him in 2010, as it related to the money owed him. By June 2011, ABC's failure to pay Singh the money Singh believed he was owed was the source of much controversy and communication between him and Drury. Singh's last day of work for ABC was June 29, 2011.

¶9 Singh filed a claim with DOLI's Wage and Hour Unit on August 1, 2011, alleging that he was owed unpaid commissions for the period of June 2010 to June 2011. At the outset, the matter was referred to DOLI's Independent Contractor Central Unit for a determination of Singh's employment status. The Independent Contractor Central Unit found that Singh was an "employee" of ABC. The Wage and Hour Unit then conducted an investigation and determined that ABC owed Singh approximately $41,000 in unpaid wages. ABC appealed, and a contested case hearing was held before DOLI's Hearings Bureau on August 31, 2012. Singh, Drury, and several other individuals testified at the hearing. The Hearings Bureau issued a Final Agency Decision on November 14, 2012, concluding that ABC owed Singh $39,080.43 in unpaid wages (commissions) plus a penalty of 55 percent of the unpaid wages, which amounted to $21,494.23.

¶10 The $39,080.43 that ABC owes Singh in unpaid commissions is composed of the following amounts. First, Singh sold and collected payments from customers in full on $1,262,049.85 in roofing contracts. Although ABC had paid Singh $125,000.00 in commissions on these sales, which is not quite the full ten percent commission, Singh sought only the additional two percent over the standard ten percent commission. That

4

amount equals $25,240.99. Second, Singh had not been paid the one percent commission he was owed on the other salespersons' sales. Based on those sales, Singh was entitled to a $9,997.46 commission.[1] Third, Singh had made four additional sales for which he had earned, but not been paid, commissions totaling $3,225.98. Lastly, the Hearing Officer found that ABC had withheld $616.00 from Singh "for no apparent reason."

¶11 ABC does not dispute that Singh's commission was increased from ten percent to twelve percent, nor does ABC dispute that Singh was entitled to receive one percent on the contracts sold by other salespersons. Moreover, ABC does not dispute that Singh was owed wages earned in Montana totaling $164,080.43 (the $125,000.00 already paid, plus the $39,080.43 found by the Hearing Officer). Rather, ABC objects to the Hearing Officer's exclusion of certain payments that ABC made to Singh totaling $51,017.13.

¶12 Specifically, the Hearing Officer found that four checks issued in August and September 2010 totaling $25,000.00 were reimbursement checks which ABC had issued to Singh as repayment for Singh's hunting-related loan to Drury. The Hearing Officer found that these checks "were not compensation and cannot be credited against amounts owed to Singh for commissions on Montana sales contracts." Likewise, the Hearing Officer found that two checks issued in September 2010 totaling $24,702.38 were compensation for work Singh had completed in other states in 2009. Again, the Hearing Officer refused to credit these checks against the commissions owed on the contracts Singh had secured in Montana. Next, the Hearing Officer excluded a check for $1,000.00

---

[1] The Hearing Officer calculated the other salespersons' sales as totaling $1,012,761.60. However, because Singh sought unpaid commissions on those sales of only $9,997.46 (rather than $10,127.62), the Hearing Officer limited his findings accordingly.

5

paid by ABC in October 2010 as compensation to Singh for managing the Billings office. Finally, the Hearing Officer excluded a check issued in October 2010 for $314.75 as reimbursement that ABC had paid to Singh for an unspecified purpose. These eight checks together total $51,017.13, which the Hearing Officer determined could not be credited against the amount ABC owed Singh for commissions earned in Montana.[2]

¶13 ABC claims that when the Hearing Officer rejected payments ABC made to Singh based on "collateral obligations" (the $25,000.00 loan and the out-of-state contracts), the Hearing Officer "substantively adjudicated" those obligations. ABC contends that DOLI lacks jurisdiction to adjudicate or make findings on unreimbursed loans and wages earned in other states. ABC advanced this argument in the District Court, but the District Court rejected it, concluding that substantial evidence in the record supports the Hearing Officer's findings regarding payments made to Singh, that the money owed to Singh for

---

[2] ABC alleges that it paid Singh a total of $181,017.13. ABC then points out that when $51,017.13 (the total amount of the checks excluded by the Hearing Officer) is subtracted from $181,017.13, the amount remaining is $130,000.00. Yet, as noted above in ¶ 10, the Hearing Officer credited ABC with payments to Singh of only $125,000.00. ABC thus questions why the Hearing Officer excluded "another $5,000"—the implication being that ABC is entitled to a $5,000.00 reduction in the amount it owes Singh. As an initial matter, we note that it is not clear from the record that ABC actually proved it made payments to Singh totaling $181,017.13. In his decision, the Hearing Officer observed: "Drury at one point contended that he had paid the claimant $181,000.00 but even his own records (Exhibit L) belie that claim. Drury's testimony is completely discounted." Furthermore, although the Hearing Officer did make an error when reciting the amounts of the excluded checks, this fact does not change the outcome of this case. Specifically, the Hearing Officer stated that the amount of the two checks issued to Singh for out-of-state work he had completed in 2009 totaled $29,702.38, when in fact these two checks (Check 7109 for $10,000.00 and Check 7169 for $14,702.38) total only $24,702.38, a difference of $5,000.00. It appears the Hearing Officer mistakenly read Check 7169 as $19,702.38 instead of $14,702.38. As we discuss below, however, the Hearing Officer had a sufficient evidentiary basis for finding that Check 7169 represented a payment to Singh for out-of-state work. *Infra* ¶ 31. The notation on the face of the check states: "payroll payoff 2009." The Hearing Officer found, and ABC concedes, that Singh earned $164,080.43 in Montana wages. Since Check 7169 was payment for out-of-state wages, the check—whatever its amount—thus has no bearing on what ABC still owes Singh for his Montana wages.

6

work in other states was relevant to the amount owed for work in Montana, and that DOLI did not decide any wage claim other than the Montana wage claim before it.

¶14 On appeal to this Court, ABC argues (1) DOLI lacked "jurisdictional authority" to exclude payments ABC made to Singh on collateral obligations (i.e., those not related to his Montana wages) and (2) there was insufficient evidence to find that the payments were for collateral obligations rather than for Singh's commissions earned in Montana.

## STANDARDS OF REVIEW

¶15 Judicial review of a final agency decision in a contested case is confined to the record. Section 2-4-704(1), MCA. The district court reviews the agency decision to determine whether the agency's findings of fact are clearly erroneous and whether the agency correctly interpreted the law. *Ostergren v. Dept. of Revenue*, 2004 MT 30, ¶ 11, 319 Mont. 405, 85 P.3d 738. The district court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Section 2-4-704(2), MCA. We have adopted a three-part test to determine if a finding is clearly erroneous:

> (1) the record will be reviewed to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, it will be determined whether the [fact-finder] misapprehended the effect of evidence; and (3) if substantial evidence exists and the effect of evidence has not been misapprehended, the [reviewing court] may still decide that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.

*Weitz v. Dept. of Nat. Resources and Conserv.*, 284 Mont. 130, 133-34, 943 P.2d 990, 992 (1997). This Court employs these same standards when reviewing a district court's order affirming or reversing an agency decision. *Ostergren*, ¶ 11.

7

**DISCUSSION**

¶16 ***Issue 1. Did the Hearing Officer lack authority to disregard certain payments by ABC to Singh on the ground that such payments were for collateral obligations?***

¶17 DOLI has a statutory duty to enforce Montana's wage laws. Section 39-1-102, MCA. The Commissioner of Labor must investigate violations of the wage laws and institute actions for the collection of unpaid wages. Section 39-3-209, MCA. Employers are required to pay each employee the wages earned by the employee, § 39-3-204(1), MCA, and when an employer fails to pay an employee in the timeframe prescribed by law, a penalty must be assessed against and paid by the employer to the employee in an amount not to exceed 110 percent of the wages due and unpaid, § 39-3-206(1), MCA.

¶18 The Montana Administrative Procedure Act (Title 2, chapter 4, MCA) sets out the general procedures for contested case proceedings in an appeal from DOLI's initial determination that a wage claim is valid. All parties are provided an opportunity to present evidence and argument on the issues involved. Section 2-4-612(1), MCA. In a wage-claim dispute, the hearing officer is not bound by statutory or common-law rules of evidence. Section 39-3-216(3), MCA. The procedures are relaxed in an effort to allow the claimant's substantive rights to be adjudicated in an informal manner and in the absence of legal representation.

¶19 Section 39-3-201(6), MCA, defines "wages" to include "any money due an employee from the employer or employers, whether to be paid by the hour, day, week, semimonthly, monthly, or yearly, and includes bonus, piecework, and all tips and gratuities . . . ." We have previously determined that the Wage Protection Act (Title 39,

8

chapter 3, MCA) is sufficiently broad to cover employees who are paid on a commission basis. *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 32, 293 Mont. 97, 973 P.2d 818. As a result, an employer who fails to pay an employee his or her earned commissions in accordance with the Wage Protection Act is subject to a penalty under § 39-3-206(1), MCA, based on the amount of wages that are due and unpaid. *Delaware*, ¶ 32.

¶20    In the instant case, Singh has alleged that ABC failed to pay him for labor undertaken in Montana. To determine the amount of unpaid wages for Singh's Montana labor, the Hearing Officer was required to sort through evidence of numerous payments that ABC had made to Singh in 2010 and 2011. This necessarily required consideration by the Hearing Officer of the personal relationship between Singh and Drury, the multistate nature of ABC's business operation and Singh's work for ABC, and certain managerial office duties that Singh performed in Billings. The Hearing Officer's task was further complicated by ABC's poor recordkeeping and its practice of paying commissions in increments after receiving payment from its customers, with the result that a commission often would not be paid until the year after it was earned. Thus, in order to sort out payments made by ABC for Singh's Montana labor *only*, the Hearing Officer needed to determine: (1) which checks issued to Singh were attributable to commissions he earned out of state; (2) which checks covered commissions for Montana contracts; (3) which checks satisfied a personal loan that Singh had made to Drury; and (4) which checks were for managing the Billings office. Contrary to ABC's contention, the Hearing Officer did not adjudicate collateral matters beyond DOLI's jurisdiction when the Hearing Officer excluded certain payments. When an employee demonstrates

9

that he performed work for which he was not compensated and produces sufficient evidence to show the extent and amount of such work—both of which Singh has done here (*infra* ¶ 32)—the hearing officer must examine the nature of the payments made by the employer to the employee to determine whether those payments should be applied against the amount that the employee claims he is still owed.

¶21 In *Hoehne v. Sherrodd, Inc.*, 205 Mont. 365, 668 P.2d 232 (1983), we considered whether DOLI had jurisdiction to rule on the wage claim of an employee who sometimes worked in North Dakota, though no actual records were kept by the employer indicating the amount of work done out of state. After noting that DOLI had a statutory duty to enforce Montana's wage laws protecting Hoehne, and that the wage laws regulate Montana corporations and require them to pay wages, we determined that DOLI had jurisdiction to adjudicate Hoehne's wage claim. *Hoehne*, 205 Mont. at 368, 668 P.2d at 233. While our decision was based largely on the fact that Hoehne was a Montana resident and Sherrodd was a Montana corporation with its principal place of business in Montana, we also noted that

> [t]o require an employee to pursue his wage claim in each state he works would unduly burden all parties involved. The employee would have to travel to each state where he worked to pursue his claim. This would lead to an oppressive burden on both the employee and the employer in many cases. For example, where a trucker hauls cargo through several states to reach his destination, it would require both the employer and the employee to go to each state to have a portion of a claim adjudicated. Each party may also need witnesses, which most likely reside in the parties' state of residence. Furthermore, as the Department points out, this would fractionalize the employee's claim to such an extent as to make pursuit of it not worthwhile.

*Hoehne*, 205 Mont. at 368-69, 668 P.2d at 234.

10

¶22    We similarly determined in *Smith v. TYAD, Inc.*, 2009 MT 180, 351 Mont. 12, 209 P.3d 228, that DOLI had jurisdiction to interpret a contract, in the context of a wage claim, between Playground Lounge and Casino and a group of exotic dancers.  The dancers challenged the compensation structure under which they were treated as independent contractors and were required to pay a fee to "rent" the performance stage and dressing room.  *Smith*, ¶¶ 16-17.  The employer responded that the stage fees were neither wages nor deductions from wages.  *Smith*, ¶ 25.  We held that "[v]oid employer/employee contracts, unlawful kick-backs, and improper withholdings or deductions are all employment matters addressed and regulated by the wage statutes and regulations," and thus DOLI had jurisdiction over these issues.  *Smith*, ¶ 32 (citing Title 39, chapter 3, part 2, MCA).

¶23    "'The policy of the [wage-claim statutes] is to aid an employe[e] in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employe[e] from promptly collecting his agreed upon compensation.'"  *Como v. Rhines*, 198 Mont. 279, 285-86, 645 P.2d 948, 951-52 (1982) (quoting *State ex rel. Nilsen v. Or. State Motor Assn.*, 432 P.2d 512, 515 (Or. 1967)).  In light of this policy, and based on the caselaw and statutory provisions discussed above, we hold that it was within DOLI's jurisdiction for the Hearing Officer to determine whether payments made by ABC to Singh were for work that he performed in Montana.  Furthermore, DOLI and the District Court correctly determined that ABC's payments on the unreimbursed Singh/Drury loan and the wages earned by Singh in other states were relevant in determining the amount ABC owed for Singh's work in Montana.

11

ABC had the burden to establish error by DOLI and the District Court. *State v. Deshaw*, 2012 MT 284, ¶ 30, 367 Mont. 218, 291 P.3d 561 ("the appellant bears the burden of establishing error on appeal"). ABC has not met that burden.

¶24 ***Issue 2. Are the Hearings Officer's factual determinations that certain checks issued to Singh were payments on collateral obligations supported by the evidence?***

¶25 An employee seeking unpaid wages has the initial burden of proving that he has performed work for which he was improperly compensated. *Garsjo v. Dept. of Labor & Indus.*, 172 Mont. 182, 189, 562 P.2d 473, 476-77 (1977) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946), and *Purcell v. Keegan*, 103 N.W.2d 494, 497 (Mich. 1960)). To meet this burden, the employee must produce sufficient evidence showing the amount and extent of such work as a matter of just and reasonable inference. *Garsjo*, 172 Mont. at 189, 562 P.2d at 477. Once an employee has shown as a matter of just and reasonable inference that wages have been earned but not paid, the burden shifts to the employer to come forward with evidence of the precise amount of the work performed or with evidence to negate the reasonableness of the inference drawn from the evidence of the employee. *Garsjo*, 172 Mont. at 189, 562 P.2d at 477. If the employer fails to produce such evidence, the employee is entitled to judgment in his or her favor, even though the amount is only a reasonable approximation. *Garsjo*, 172 Mont. at 189, 562 P.2d at 477.

¶26 The Hearing Officer found that Singh had demonstrated, as a matter of just and reasonable inference, that he obtained contracts for ABC in Montana but was not paid all of his commissions for those contracts. The Hearing Officer thus found that the burden

had shifted to ABC to come forward with evidence of the precise amount of work Singh had performed or with evidence to negate the reasonableness of the inference drawn from Singh's evidence. The Hearing Officer concluded that ABC had not met this burden.

¶27 On appeal, ABC contends that Singh failed to produce sufficient evidence that certain payments made by ABC to Singh should be excluded from the calculations of what ABC still owes Singh for his Montana work. More specifically, ABC argues that the evidence is insufficient for finding that the four checks totaling $25,000.00 were reimbursement for Singh's hunting-related loan to Drury and that the two checks totaling $24,702.38 were compensation for work Singh had done in other states in 2009. ABC maintains that these amounts should be credited against the amount that the Hearing Officer found was still owed by ABC for Singh's Montana wages.[3]

¶28 In Montana, employers have a duty to maintain accurate records of employees' wages or amounts earned. *Tefft v. State*, 271 Mont. 82, 94, 894 P.2d 317, 325 (1995); *Garsjo*, 172 Mont. at 188-89, 562 P.2d at 476. If the employer fails to record the employee's hours, the employee's records may be used to determine the amount of time worked. *Holbeck v. Stevi-West, Inc.*, 240 Mont. 121, 125-26, 783 P.2d 391, 394 (1989). "The employee's records, however, need not be precise. The employee may substantiate his claim by proving that he has in fact performed work for which he was improperly

---

[3] Actually, ABC purports on appeal to challenge the Hearing Officer's exclusion of the entire $51,017.13 (*supra* ¶ 12). ABC's arguments, however, focus on the six checks covering the hunting loan and the out-of-state wages, which total $49,702.38. ABC presents no precise arguments as to the $1,000.00 check for managing the Billings office or the $314.75 check designated as "Reimbursement" for an unspecified purpose. In any case, for the reasons discussed below, we conclude the Hearing Officer's finding that all eight checks were for purposes other than the payment of Montana wages is supported by the evidence.

13

compensated and producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Holbeck*, 240 Mont. at 126, 783 P.2d at 394 (brackets and internal quotation marks omitted).

¶29    In *Garsjo*, as noted, we relied on a United States Supreme Court case discussing the difficulty that an employee confronts when an employer keeps insufficient records. 172 Mont. at 188-89, 562 P.2d at 476 (discussing *Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192).  As the Supreme Court reasoned in *Anderson*:

> When the employer has kept proper and accurate records the employee may easily discharge his burden [of proving that he performed work for which he was not properly compensated] by securing the production of those records.  But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises.  The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

328 U.S. at 687, 66 S. Ct. at 1192.  The Supreme Court held that, in such a situation, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192.  As explained above, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.  And, if the employer fails to produce such evidence, "the court

14

may then award damages to the employee, even though the result be only approximate." *Anderson*, 328 U.S. at 687-88, 66 S. Ct. at 1192.

¶30 The Hearing Officer found that ABC had breached its duty to properly account for commissions Singh had earned and, therefore, that Singh was entitled to substantiate his wage claim with his own records. *Holbeck*, 240 Mont. at 125-26, 783 P.2d at 394. The Hearing Officer observed that "Drury simply did not keep track of the contracts coming in which Singh procured and for which he was due payment." Moreover, "Drury essentially admitted that he did not keep track of records on commissions paid and the records he did provide had all been edited by Drury after [Singh] had filed his wage claim. The records Drury did maintain are inconsistent and Drury's testimony was inconsistent." The Hearing Officer thus "completely discounted" Drury's testimony.

¶31 Singh, consequently, produced sales reports, email exchanges, text messages, checks, and other memoranda—in addition to his own testimony—to substantiate his claim. Singh also produced documentation of contracts he had secured on ABC's behalf as well as contracts arranged by other salespersons. The checks that are the source of the instant dispute bore notations indicating whether they were for reimbursements, commissions earned in another state in 2009, commissions earned in Billings, or office duties and management. The Hearing Officer found Singh's testimony regarding the purposes for which the disputed checks had been issued to be credible, and it is not the reviewing court's job to second-guess a hearing officer's assessment of a witness's credibility. Having heard the testimony and observed the witnesses, the Hearing Officer was in the best position to determine their credibility and the weight to be given to their

testimony. His determinations in this regard are entitled to great deference. *Benjamin v. Anderson*, 2005 MT 123, ¶ 37, 327 Mont. 173, 112 P.3d 1039. As long as we determine—as we do here—that "substantial credible evidence exists to support the findings of the trier of fact, we may not re-weigh the evidence, but must instead defer to the Hearing Examiner." *Benjamin*, ¶ 37.

¶32 Singh produced evidence, through testimony and documents, of work performed in Montana without proper compensation. Singh also produced evidence that some of the checks he had received from ABC were not compensation for work he had performed in Montana, but were instead payments for collateral obligations. In order to compute the amount of commissions that ABC still owed Singh for his Montana work, the Hearing Officer necessarily determined whether certain prior payments by ABC to Singh should be excluded from that calculation. The Hearing Officer's findings are supported by substantial evidence and the effect of the evidence was not misapprehended. The Hearing officer carefully and comprehensively considered the evidence and correctly applied the law. The District Court, in turn, correctly affirmed the Hearing Officer's Final Agency Decision under the applicable standards of review.

¶33 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE