# JEFF FAUQUE,
## Petitioner and Appellant,
### v.
# MONTANA PUBLIC EMPLOYEES RETIREMENT BOARD,
## Respondent and Appellee.

No. DA 13-0710.
Submitted on Briefs June 11, 2014.
Decided July 15, 2014.
2014 MT 184.
375 Mont. 443.
329 P.3d 593.

For Appellant: **Ben A. Snipes**, Lewis, Slovak & Kovacich, P.C.; Great Falls.

For Appellee: **Katherine E. Talley**, Special Assistant Attorney General; Helena.

JUSTICE SHEA delivered the Opinion of the Court.

¶1 Jeff Fauque appeals from an order of the First Judicial District Court, Lewis and Clark County, affirming the Final Order of the Montana Public Employees' Retirement Board (PERB) which determined that Fauque is ineligible to receive disability benefits

under the Sheriffs' Retirement Systems (SRS) because he failed to establish that he is permanently disabled due to his Post-Traumatic Stress Disorder (PTSD).

¶2 Fauque presents the following issue for our review:

¶3 *Did the District Court err in affirming the disability findings of PERB?*

¶4 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Appellant Jeff Fauque was an officer with the Glacier County Sheriff's Office (GCSO) from 1995 to 2010. As part of his duties, Fauque served as deputy coroner for Glacier County, responding to and investigating fatalities and suicides. Because Glacier County has a small population, Fauque occasionally investigated the deaths of people he knew.

¶6 On October 4, 2010, Fauque entered a private residence intending to steal prescription drugs. Fauque subsequently pled guilty to two misdemeanors and surrendered all of his Montana Public Safety Officer Standards and Training certifications and resigned from the GCSO.

¶7 The night of this October incident, Fauque was admitted to the Pathways Treatment Center in Kalispell for opioid addiction. On October 8, 2010, Fauque was discharged from Pathways and admitted to the Rimrock Foundation in Billings. At Rimrock, Rick Pullen, D.O., a licensed physician and board-certified psychiatrist, examined Fauque and diagnosed him with PTSD, major depression, and opioid dependence. Dr. Pullen based his diagnosis on Fauque's self-reported history and symptoms. Fauque was discharged from Rimrock on November 11, 2010. Fauque then sought treatment with Dennis Hanson, a licensed clinical social worker. Counselor Hanson did not testify or submit any reports.

¶8 Randy Webb, M.D., Fauque's family physician in Cut Bank, had treated Fauque for depression and anxiety for fifteen years. Dr. Webb also diagnosed Fauque with PTSD shortly after his discharge from Rimrock. In August 2011, Fauque sought treatment for his PTSD from Peter Stivers, Ph.D., a clinical psychologist in Great Falls. Drs. Pullen, Stivers, and Webb agreed that Fauque's opioid dependence developed, in part, when he began self-medicating to treat his then-undiagnosed PTSD, which itself was caused by exposure to traumatic events while employed with the GCSO.

¶9 In January 2011, Fauque applied for disability retirement benefits

from the SRS, claiming he was permanently disabled due to the PTSD he developed while working at the GCSO. PERB denied Fauque's application on June 9, 2011. Fauque requested reconsideration of his application, which PERB denied on December 8, 2011.

¶10 In denying Fauque's application, PERB relied on the opinion of Dean Gregg, Ph.D., a clinical psychologist who had conducted a records review at PERB's request. Dr. Gregg reviewed Fauque's application files but did not examine Fauque himself. Although Dr. Gregg agreed that Fauque suffers from PTSD, he disagreed that the PTSD was permanently disabling. Dr. Gregg also noted that Fauque had not been consistent in reporting his history to his various treating doctors, and therefore those treating doctors had incomplete information when diagnosing Fauque.

¶11 Regarding Fauque's assertion that his PTSD led to his opioid addiction and resignation from the GCSO, Dr. Gregg opined that other issues in Fauque's life, such as marital problems and family dysfunction, led to his drug use. Dr. Gregg did not believe Fauque's PTSD was the sole, or even primary, cause of Fauque's opioid addiction.

¶12 After a hearing on June 21, 2012, the hearing examiner found that Fauque had failed to meet his burden regarding the existence of a disability arising from an injury in the line of duty that prevented his continuing employment. In his Proposed Findings of Fact and Conclusions of Law, the hearing examiner noted that of the three treating doctors who testified, only Dr. Webb treated Fauque before the October incident, and Dr. Webb did not diagnose Fauque with PTSD until after he was diagnosed by Dr. Pullen in October 2010. The hearing examiner agreed with Dr. Gregg's assessment that Fauque's treating doctors had incomplete information when diagnosing Fauque.

¶13 PERB adopted the hearing examiner's Findings of Fact and Conclusions of Law and denied Fauque's disability claim on January 10, 2013. PERB does not dispute that Fauque suffers from PTSD; however, PERB disputes that Fauque's PTSD is permanently disabling.

¶14 On February 12, 2013, Fauque filed a Petition for Judicial Review of PERB's decision in the Eighth Judicial District, Cascade County. On February 14, 2013, the parties filed a joint motion to change venue to the First Judicial District, Lewis and Clark County. After oral argument on July 17, 2013, the District Court denied Fauque's Petition and affirmed PERB's decision to deny benefits by order dated September 23, 2013.

## STANDARD OF REVIEW

¶15 A district court reviews the agency's findings of fact to determine whether they are clearly erroneous. Section 2-4-704(2)(a)(v), MCA. The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Section 2-4-704(2), MCA. The review must be confined to the record. Section 2-4-704(1), MCA.

¶16 We review the district court's order to determine whether it "properly applied the correct standard of review to the administrative decision of PERB. That is, did the District Court determine whether the administrative findings of fact were clearly erroneous and whether the agency's interpretation of the law was correct[?]" *Weber v. Pub. Emp. Ret. Bd.*, 270 Mont. 239, 245, 890 P.2d 1296, 1300 (1995).

¶17 The district court applies the following three-part test to determine whether an agency decision is clearly erroneous:

> (1) the record will be reviewed to see if the findings are supported by substantial evidence;
>
> (2) if the findings are supported by substantial evidence, it will be determined whether the trial court misapprehended the effect of [the] evidence; and
>
> (3) if substantial evidence exists and the effect of [the] evidence has not been misapprehended, the Supreme Court may still decide that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.

*Weitz v. Mont. Dept. of Natural Res. & Conserv.*, 284 Mont. 130, 133-34, 943 P.2d 990, 992 (1997). We apply the same test when reviewing a district court's order affirming or reversing an agency decision. *America's Best Contractors, Inc. v. Singh*, 2014 MT 70, ¶ 15, 374 Mont. 254, 321 P.3d 95.

¶18 Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Simms v. State Comp. Ins. Fund*, 2005 MT 175, ¶ 11, 327 Mont. 511, 116 P.3d 773. The test is not whether the evidence might support a different conclusion, but whether there is substantial evidence in the record to support the conclusion reached by the agency. *Knowles v. State ex rel. Lindeen*, 2009 MT 415, ¶ 21, 353 Mont. 507, 222 P.3d 595.

## DISCUSSION

¶19 Fauque argues that the District Court erred in affirming PERB's denial of his disability claim because the denial is not supported by

substantial evidence. Fauque contends that PERB improperly deferred to Dr. Gregg's opinion over the opinions of his treating doctors and that Dr. Gregg did not provide a competent medical opinion in this case.

¶20 Dr. Gregg was retained by PERB under the auspices of § 19-2-406(4), MCA, which allows PERB to retain medical personnel to advise it in assessing the nature and extent of disabling conditions while reviewing claims for disability retirement. "Disability" is defined as:

> a total inability of the [PERB] member to perform the member's duties by reason of physical or mental incapacity. The disability must be incurred while the member is an active member and must be one of permanent duration or of extended and uncertain duration, as determined by [PERB] on the basis of competent medical opinion.

Section 19-2-303(20), MCA. "Total inability" means the member is unable to perform the essential elements of the member's job duties even with reasonable accommodation. Admin. R. M. 2.43.2602(5) (2014).

¶21 The hearing examiner determined that Fauque failed to meet his burden of showing the existence of a disability that prevented his continued employment with the GCSO. In reaching this determination, the hearing examiner relied on the testimony of Dr. Gregg and Wayne Dusterhoff, the Glacier County Sheriff in 2010. Dr. Gregg testified that while he was confident that Fauque suffered from PTSD, he had seen no evidence that his PTSD impaired him at work. Sheriff Dusterhoff, who had worked with Fauque on a daily basis for fifteen years, testified that Fauque did not appear to be impaired at work in any manner before October 2010. Sheriff Dusterhoff was aware that Fauque struggled with depression, but he was unaware that Fauque suffered from PTSD. Sheriff Dusterhoff testified that he could have made accommodations for Fauque, such as relieving Fauque of certain duties as he had done for other deputies or granting Fauque a leave of absence to obtain treatment; however, Fauque had never requested any accommodations before resigning.

¶22 Although Drs. Pullen, Stivers, and Webb testified that Fauque's PTSD made it impossible to perform the duties of a law enforcement officer, their opinions were based primarily on Fauque's self-reporting of his condition and its effect on his performance at work. None of Fauque's treating physicians who testified read the job duty questionnaire Fauque submitted with his benefits application, nor did they speak with anyone other than Fauque about the duties of a GCSO officer. Sheriff Dusterhoff, who has direct and personal knowledge of

Fauque's performance at the GCSO, testified that Fauque performed his duties very competently with no negative performance appraisals and that Fauque himself did not express concern about his ability to do his job until after the October 2010 incident.

¶23 Fauque argues that Dr. Gregg could not provide a competent medical opinion in this case because he did not contact Fauque's treating physicians nor personally examine Fauque. Therefore, Fauque argues, Dr. Gregg's opinion does not constitute substantial evidence to support the denial of benefits. We disagree. We rejected a similar argument in *EBI/Orion Grp. v. Blythe*, 1998 MT 90, 288 Mont. 356, 957 P.2d 1134, in which we held that a psychologist who did not personally examine the claimant but reviewed the case files and observed the claimant's testimony at hearing had sufficient foundation to give a competent medical opinion.

¶24 Fauque cites *Cottrell v. Burlington N. R.R. Co.*, 261 Mont. 296, 863 P.2d 381 (1993), as a "nearly identical scenario" in which this Court held that a medical records reviewer lacked the foundation to present competent opinions concerning a plaintiff's symptoms and disability. *Cottrell* is not nearly as identical to the current case as Fauque contends. In *Cottrell*, the medical records reviewer was a neurosurgeon, Dr. Neil Meyer, who was asked to apportion the plaintiff's damages between the incident which was the subject of his lawsuit and his prior injuries. This Court held that Dr. Meyer's opinion was properly excluded as lacking foundation because, aside from not examining the plaintiff, Dr. Meyer had not read any deposition testimony or reports from the treating physicians, and knew nothing of the plaintiff's job description. Conversely, in this case Dr. Gregg read the deposition testimony and reports of the three treating doctors and reviewed Fauque's medical and personnel files, including the job duty questionnaire. Fauque's reliance on *Cottrell* is misplaced.

¶25 Relying on our decision in *Harris v. Hanson*, 2009 MT 13, 349 Mont. 29, 201 P.3d 151, Fauque next argues that Dr. Gregg's opinion should have been excluded under M. R. Evid. 702. In *Harris*, we explained that an expert's reliability is tested in three ways under Rule 702: (1) whether the expert field is reliable, (2) whether the expert is qualified, and (3) whether the expert reliably applied the reliable field to the facts. *Harris*, ¶ 36. "The question whether a qualified expert reliably applied the principles of that reliable field to the facts of the case is for the finder of fact." *Harris*, ¶ 36. Fauque does not dispute that Dr. Gregg satisfied the first two criteria of this test. Fauque takes issue with Dr. Gregg's opinion under the third criterion.

Fauque contends that Dr. Gregg could not reliably apply the field of psychology to the facts of his case because Dr. Gregg did not personally examine him. However, the hearing examiner, sitting as the fact-finder, determined that Dr. Gregg properly applied the principles of psychology to the facts of the case and gave a competent medical opinion on which PERB could rely. The hearing examiner's reliance on Dr. Gregg's opinion under these circumstances was not clearly erroneous.

¶26 Fauque argues that the hearing examiner improperly gave greater weight to Dr. Gregg's opinion than to the opinions of his treating doctors. The opinions of a claimant's treating physicians are generally entitled to greater weight than the opinions of other experts. *Weber*, 270 Mont. at 246, 890 P.2d at 1300. However, a treating physician's opinion is not conclusive. *EBI/Orion Group*, ¶ 13. The hearing examiner may disregard a treating physician's medical opinion if there are specific and legitimate reasons to do so. *Weber*, 270 Mont. at 246, 890 P.2d at 1300. In this case, the hearing examiner set forth specific and legitimate reasons for relying on Dr. Gregg's opinion and thoroughly explained these reasons in his Proposed Findings of Fact and Conclusions of Law.

## CONCLUSION

¶27 ■ The District Court thoroughly reviewed PERB's findings in this case and concluded that the findings were supported by substantial evidence in the record. The District Court did not misapprehend the effect of the evidence presented and it properly determined that the findings of PERB were not clearly erroneous. Our review of the record does not leave us with the definite and firm conviction that a mistake has been committed.

¶28 We affirm.

CHIEF JUSTICE McGRATH, JUSTICES WHEAT, BAKER and RICE concur.